*In re* EMANUEL J. RAMOS MELÉNDEZ y JOSÉ I. CABIYA ORTIZ, querellados.

*Número:* CE-86-281      *Resuelto:* 6 de abril de 1988

*Eliadís Orsini Zayas, Procuradora General Auxiliar*, abogada de El Pueblo; *José Cabiya Morales*, abogado del querellado, José I. Cabiya Ortiz; *Emanuel J. Ramos Meléndez*, por derecho propio.

PER CURIAM: El 2 de mayo de 1986, según una querella presentada por la Directora Estatal del Farmer's Home Administration del Departamento de Agricultura de Estados Unidos, Sra. Julia R. de Vincenti, el Procurador General presentó querella contra los abogados notarios Emanuel J. Ramos Meléndez y José I. Cabiya Ortiz. Al licenciado Ramos Meléndez le imputó haber violado la fe pública notarial y el Canon 35 de Ética Profesional, 4 L.P.R.A. Ap. IX, al "prepar[ar] y autoriz[ar] la Escritura Núm. 64 de 1 de junio

de 1979, sobre compraventa, otorgada ante él por don Angel M. Cabiya y doña Gloria Burgos de Cabiya, como vendedores y Antonio E. Rosario González y Lydia Rosario Zayas, como compradores, [y] certificar —descansando en la información que le suministró el Lic. Cabiya Ortiz— que la propiedad comprada estaba libre de gravámenes; cuando en realidad dicha propiedad . . . tenía un gravamen hipotecario inscrito mediante la Escritura Núm. 10, que se había otorgado el 11 de enero de 1977, por los esposos Angel Rafael Cabiya y Gloria H. Burgos, ante el notario Angel Rivera Colón". Querella, págs. 1–2. Al licenciado Cabiya Ortiz, a su vez, se le imputó haber violado los Cánones 26, 30 y 35 de Ética Profesional, 4 L.P.R.A. Ap. IX, al preparar en forma descuidada y negligente "el estudio de título de la propiedad perteneciente a sus parientes Angel M. Cabiya y doña Gloria Burgos de Cabiya para que vendieran la misma a los señores Rosario González y Rosario Zayas . . . [omitiendo] informar en el estudio de título un gravamen inscrito en el año 1977 . . . induciendo a error al notario Ramos Meléndez; lo cual ha causado serios problemas a los compradores, pues se otorgó y autorizó la Escritura Núm. 64, mencionada, ignorando el notario autorizante y la parte compradora del gravamen existente". Querella, pág. 2.

Los querellados contestaron y designamos al Lcdo. Agustín Mangual Hernández en calidad de Comisionado Especial. Luego de los trámites correspondientes éste rindió su informe en el cual hizo las determinaciones de hecho siguientes:

1. El Lcdo. Emanuel J. Ramos Meléndez fue admitido a la abogacía el 16 de diciembre de 1971 y autorizado al ejercicio de la notaría el 31 de enero de 1972. El Lcdo. José I. Cabiya Ortiz fue admitido al ejercicio de la abogacía el 9 de enero de 1970 y autorizado al ejercicio de la notar[í]a el 3 de febrero del mismo año.

2. Para el año 1979 el Lcdo. José I. Cabiya Ortiz era "escrow agent" de la agencia federal, Farmer Home Administra-

tion. En tal capacidad recibió una comunicación de la oficina local de Ciales de dicha agencia en la que le indicaban que hiciera un estudio de título sobre una propiedad que, cuando éste visitó el Registro correspondiente, resultó que pertenecía a Ángel R. Cabiya San Miguel y Gloria Burgos. Estaba registrada con el número de finca 6074, inscrita al folio 197 del tomo 128 de Ciales. El Lcdo. Cabiya Ortiz entonces se percató de que el dueño de dicha propiedad tenía un parentesco con él dentro del cuarto grado de consanguinidad. Ante tal situación, le envió un Memorándum al señor Bonilla, quien era oficial de Farmer Home Administration en Ciales, conjuntamente con un estudio de título [fechado 20 de febrero de 1979.] (Exhibits IV y V del Procurador General).

3. En el mencionado certificado de estudio de título no se incluyó una hipoteca constitu[i]da a virtud de la escritura número 10 otorgada en Ciales el 11 de enero de 1977 ante el Notario, Ángel Rivera Colón, mediante un pagaré al portador para garantizar el pago de la suma de $15,000.00.(1) Una certificación registral expedida por el Registrador de la Propiedad de Manatí el 12 de diciembre de 1980 revela que el mencionado gravamen aparecía inscrito en el Registro de la Propiedad (Exhibit IX del Procurador General).

4. Posteriormente, la Farmer Home Administration le refirió al Lcdo. Emanuel J. Ramos Meléndez el estudio de título preparado por el Lcdo. Cabiya Ortiz con el propósito de que, como notario, otorgara la escritura de compraventa y constitución de hipoteca a favor de dicha administración. Éste, en fecha 1 de junio de 1979, otorgó la escritura número 65 a favor de Estados Unidos de América para garantizar el pago de una suma de $30,000.00, siendo los vendedores los esposos Ángel R. Cabiya y Gloria Burgos de Cabiya, y los compradores, doña Lydia Rosario Zayas y Antonio E. Rosario González (Exhibit IX del Procurador General).

5. Posteriormente, al descubrirse que la hipoteca constitu[i]da a favor de Farmer Home Administration no tenía ca-

---

(1) Durante las vistas de la querella el Lcdo. José I. Cabiya Ortiz manifestó que no incluyó dicho gravamen en el estudio porque no se percató de él. "[N]o me percaté a pesar del estudio diligente que hice, no me percaté." Transcripción de la vista, pág. 130.

rácter preferente porque existía la mencionada primera hipoteca, los querellados hablaron con el deudor hipotecario, señor Cabiya [San Miguel] y éste les informó que el pagaré objeto de la primera hipoteca se le había perdido. Entonces el querellado, Lcdo. Ramos Meléndez, se hizo cargo de radicar un procedimiento para cancelar dicho pagaré en el [T]ribunal Superior, Sala de Arecibo.

6. A esos efectos, en septiembre de 1979, el Lcdo. Meléndez radicó a nombre de doña Gloria H. Burgos y don Ángel R. Cabiya San Miguel el caso número 79-4895 en la Sala de Arecibo del Tribunal Superior, sobre Cancelación de Pagaré Extraviado. Luego de los trámites correspondientes, la mencionada sala dictó una Resolución el 14 de enero de 1981 declarando con lugar la demanda sobre Cancelación de pagaré al portador extraviado (Exhibit VIII del Procurador General).

7. Luego, los querellados descubrieron que dicho pagaré no estaba perdido como alegaba el señor Cabiya [San Miguel] sino que, por el contrario, había sido negociado y estaba en poder de la Corporación para la Administración de la Sindicatura del Banco Obrero.

8. Posteriormente, y en vista de que los deudores no pagaban la deuda, la Corporación para la Administración de la Sindicatura del Banco Obrero radicó una acción de ejecución de hipoteca. Aparentemente durante algún tiempo se estuvo tramitando el pago de dicha deuda.

9. El 1 de diciembre de 1986 la Corporación para la Administración de la Sindicatura del Banco Obrero le envió una comunicación al Lcdo. Ángel R. Cabiya informándole que el préstamo relacionado con el caso civil 81-673, Gloria Burgos de Cabiya, había sido saldado y el pagaré que garantizaba el mismo fue entregado a dicho querellado (Exhibit II del querellado, Lcdo. Cabiya Ortiz).

10. En la vista de este caso se ofreció en evidencia y se ordenó el desglose del pagaré hipotecario al portador por la suma de $15,000.00 suscrito por los señores Ángel Cabiya San Miguel y Gloria Burgos de Cabiya ante el Notario Ángel Rivera Colón, el 1 de enero de 1977 (Exhibit III del querellado, Lcdo. Cabiya Ortiz).

11. En la vista de este caso declaró el Lcdo. Bolívar Dones Rivera, quien, en síntesis, dijo que él era funcionario o asesor

legal del Departamento de Agricultura Federal y en tal capacidad asesoraba también a la Directora del F[armers] Home Administration. Que él tenía entendido que la hipoteca que tenía primer rango en el Registro de la Propiedad había sido pagada y se encuentra en proceso de ser cancelada a través de las escrituras correspondientes. Declaró, además, que si ha sido saldada la primera hipoteca mencionada y la hipoteca a favor de Farmer Home pasa a tener primer rango en el Registro, entonces la Directora Estatal de dicha agencia federal no tiene interés en procedimientos ulteriores en relación con los querellados. Informe del Comisionado Especial, págs. 4–7.

Analizaremos estos hechos tomando en consideración que "[l]a función del notario trasciende el acto externo de la legalización de unas firmas". *In re Meléndez Ruiz*, 104 D.P.R. 770, 775 (1976). De la situación fáctica de este caso se desprende que el licenciado Ramos Meléndez, al confiar en un estudio de título hecho más de tres meses antes, otorgó una escritura de compraventa en la que hizo constar que la propiedad objeto de la transacción estaba "libre de toda carga o gravamen". Esta aseveración era contraria a la realidad registral. En *Goenaga* v. *O'Neill de Milán*, 85 D.P.R. 170, 194 (1962) y en *In re Lavastida et al.*, 109 D.P.R. 45, 79 (1979) (opinión del Juez Asociado Señor Irizarry Yunqué), dijimos que el notario que autoriza una escritura no puede ignorar el estado registral de la propiedad sobre la cual otorgan la escritura a la fecha del otorgamiento. En *Chévere* v. *Cátala*, 115 D.P.R. 432, 443–445 (1984), reconocimos que:

> *[La] investigación de los antecedentes, al igual que la determinación de cargas y gravámenes a hacerse en la escritura, resultan de incuestionable trascendencia*, para "efectos civiles (por ejemplo, saneamiento por gravámenes de la finca vendida 'sin mencionarlo la escritura')"; para "efectos registrales, para la confrontación con las que figuren en el Registro, si bien la falta de expresión de cargas en las escrituras no es defecto que impida la inscripción del título"; y a "efectos notariales, porque la determinación de las cargas es necesaria

para la posterior concreción en la parte dispositiva de las responsabilidades que contrae cada parte contratante"; a "efectos fiscales . . .".

.    .    .    .    .    .    .

Y finalmente, sobre la advertencia, "El Notario en todo caso 'advertirá al adquirente de la conveniencia de que se acredite el estado de cargas con la certificación del Registro de la Propiedad, o lo compruebe directamente examinando los libros del mismo'. *Y quizá convenga advertir también que la expedición de la certificación no cierra el Registro y que, por tanto, no obstante la certificación negativa que se presente, pueden existir cargas inscritas con posterioridad . . . por muy reciente que sea dicha certificación.*" (Escolio omitido y énfasis suplido.)

A tenor con todo lo antes expuesto, no cabe duda que al confiar en un estudio de título hecho tres meses antes y hacer constar en la escritura otorgada que la propiedad estaba libre de cargas y gravámenes, hecho este contrario a la realidad registral, el abogado-notario Ramos Meléndez no actuó con el debido cuidado al ejercer su función notarial. Sin embargo, los hechos también demuestran que no hubo mala fe ni intención de engañar de parte del querellado y que cuando éste se percató del error cometido y de las posibles consecuencias adversas para la querellante, la acreedora hipotecaria, desplegó gran diligencia en lograr corregir y subsanar el mismo. La querellante expresó que no tenía interés en ulteriores procedimientos en relación con los querellados. Al tomar en consideración estas circunstancias atenuantes, amonestamos al abogado-notario Ramos Meléndez y le apercibimos que en el futuro deberá observar con mayor rigor los preceptos notariales.

Con respecto al abogado-notario Cabiya Ortiz, su falta consistió en no realizar el estudio registral con el cuidado y detenimiento que tan importante gestión requiere. Los autos del caso también reflejan que una vez se le trajo a

su atención el problema cooperó y laboró con el abogado-notario Ramos Meléndez para realizar las gestiones necesarias para evitar que la querellante sufriera daños. Al tomar en consideración todo lo antes descrito se advierte al abogado-notario Cabiya Ortiz que en el futuro deberá ejercer mayor cuidado al realizar estudios de título.

Por todo lo antes expuesto, *se dictará sentencia por la cual se amonesta al abogado notario Ramos Meléndez y se le apercibe de que en el futuro debe observar con mayor rigor los preceptos notariales. En relación con el abogado-notario Cabiya Ortiz, se le advierte que en el futuro debe ejercer mayor cuidado al realizar estudios de título.*

Los Jueces Asociados Señores Rebollo López, Ortiz y Alonso Alonso no intervinieron.