*In re* SIXTO PABÓN GARCÍA.

*Número:* AB-2000-156          *Resuelto:* 6 de febrero de 2002

---

*Carmen H. Carlos, Directora de la Oficina de Inspección de Notarías, y Edgardo Ortiz Bauzá, Director Interino de la Oficina de Inspección de Notarías, en informe; Sixto Pabón García, pro se.*

PER CURIAM: El 30 de octubre de 2000, los esposos Francisco Cintrón Rivera y Fulgencia Rodríguez Ortiz (en adelante esposos Cintrón Rodríguez) presentaron ante nos una queja contra el Lcdo. Sixto Pabón García (en adelante licenciado Pabón García, abogado, abogado querellado o querellado). Adujeron, en síntesis, que el querellado tardó ocho años en inscribir la Escritura Núm. 112 sobre Segregación, Cesión de Derechos y Acciones Hereditarias y Compraventa que otorgara el 7 de noviembre de 1992, en la que éstos comparecieron en calidad de compradores de una finca. Alegaron que la tardanza en inscribir la propiedad inmueble en el Registro de la Propiedad puso en riesgo el crédito de ambos, además de perjudicar sus labores en la agricultura.

El abogado contestó la queja y remitimos el asunto a la Lcda. Carmen H. Carlos, Directora de la Oficina de Inspección de Notarías (en adelante licenciada Carlos). Con el

beneficio de su informe y demás documentos que obran en autos, hacemos un recuento del trasfondo fáctico y procesal que dio lugar al asunto que hoy nos ocupa.

## I

El 14 de junio de 1963, mediante la Escritura de Compraventa Núm. 52, otorgada ante el notario Celestino Domínguez Rubio, el Sr. Aguedo Perales Tirado y su esposa Celestina Tirado vendieron una finca de 31.60 cuerdas ubicada en el Barrio Jacaboa de Patillas (en adelante finca original). En la transacción participaron como compradores: Elodia Tirado y su esposo Marcos Plaud; Eugenia Tirado; Anacleto Tirado y su esposa Carmen Luz Rodríguez; Lydia Tirado; Áurea Tirado y su esposo Ernesto Lebrón; Antonio Tirado y su esposa Cruz Padilla, y *Juana Tirado y su esposo Aniceto Tirado* (en adelante Sucesión Tirado). Cada comprador adquirió en una proporción de una séptima parte. La escritura fue inscrita en el Folio 101 del Tomo 76 del Registro de la Propiedad, Sección de Patillas, Finca 2051, Inscripción 11.

Así las cosas, el 14 de diciembre de 1976 falleció intestada una de las compradoras, la Sra. Juana Tirado. Mediante Resolución de 11 de febrero de 1991, caso Civil Núm. 91–854, sobre Declaratoria de Herederos, el entonces Tribunal Superior, Sala de Bayamón, decretó único y universal heredero a su hijo, el Lcdo. Manuel Antonio Santiago Tirado (en adelante licenciado Santiago Tirado). A Don Aniceto Tirado Rosario, t/c/p Anacleto Tirado Rosario, como viudo de la señora Tirado, se le autorizó la cuota viudal correspondiente.

Posteriormente, Don Aniceto Tirado Rosario, el viudo de Doña Juana Tirado y padrastro del licenciado Santiago Tirado, falleció el 31 de mayo de 1978. El 28 de abril de 1992, a solicitud del licenciado Santiago Tirado, único heredero de Juana Tirado, y representado por su abogado el aquí querellado, el entonces Tribunal Superior, Sala de Patillas

(mediante resolución emitida en el caso Civil Núm. CD 92–91, sobre Declaratoria de Herederos) decretó que don Aniceto Tirado Rosario no procreó hijos con Juana Tirado ni "se le conoce descendientes o ascendientes en grado colateral hasta el sexto grado de consanguinidad". Cabe destacar que en la Petición sobre Declaratoria de Herederos, el licenciado Santiago Tirado solicitó que la participación de Don Aniceto Tirado en algún bien que le haya pertenecido, fuera consignado en el tribunal y que, de no haber reclamación dentro del término de ley, dicha participación fuera asignada a la Universidad de Puerto Rico. No obstante, el tribunal de instancia nada dispuso al respecto.[1]

Así las cosas, el 7 de noviembre de 1992, mediante la Escritura Núm. 112 sobre Segregación, Cesión de Derechos y Acciones Hereditarias y Compraventa otorgada ante el abogado querellado, la Sucesión Tirado y el licenciado Santiago Tirado, en sustitución de su madre fallecida (Juana Tirado), segregaron un predio de la finca original y vendieron el remanente (31.0163) a los esposos Cintrón Rodríguez por la suma de cuarenta y cinco mil dólares ($45,000).

El precio de venta fue dividido en siete partes correspondientes a la proporción en la cual habían adquirido los condueños originales. En la distribución, el querellado le entregó al licenciado Santiago Tirado una séptima parte del precio de venta, incluido en ésta el cincuenta por ciento (50%) que le correspondía como heredero de Doña Juana Tirado y *el cincuenta por ciento (50%) que correspondía a Don Aniceto Tirado* (esposo también fallecido de Doña Juana), para un equivalente aproximado de seis mil dólares ($6,000). La Escritura Núm. 112 fue presentada en el Re-

---

[1] Debemos puntualizar que la Petición sobre Declaratoria de Herederos fue acompañada de una declaración jurada suscrita por el Lcdo. Manuel Antonio Santiago Tirado ante el Lcdo. Sixto Pabón García (abogado querellado). En la declaración afirmó que solicitó los servicios profesionales del querellado para que le tramitara la declaratoria de herederos de Don Aniceto Tirado y que lo declarado en la petición era cierto por constarle de personal y propio conocimiento.

gistro de la Propiedad, Sección de Guayama, el 7 de noviembre de 1992.

Respecto a la finca adquirida bajo la Escritura Núm. 112, los esposos Cintrón Rodríguez suscribieron una hipoteca voluntaria a favor de *Farmers Home Administration* (en adelante F.H.A.) o a su orden por la suma principal de cuarenta y cinco mil dólares ($45,000), más intereses al cinco por ciento (5%) anual. Dicho trámite se hizo bajo la Escritura de Compraventa Núm. 121 sobre Hipoteca Voluntaria, la cual también fue otorgada por el abogado querellado el 10 de diciembre de 1992.

Posteriormente, y con el fin de poner al día un atraso en el pago de la hipoteca constituida a favor de la F.H.A., los esposos Cintrón Rodríguez obtuvieron un permiso de la F.H.A. para segregar y vender un solar de la finca adquirida mediante la Escritura Núm. 112.

Así pues, el 28 de marzo de 1994, mediante la Escritura Núm. 25 (Segregación, Liberación de Hipoteca y Compraventa), otorgada también ante el querellado, los esposos Cintrón Rodríguez segregaron una parcela de la finca que adquirieron mediante la Escritura Núm. 112 y se la vendieron a los esposos Edwin Rodríguez Rodríguez y Mayleen Cintrón Rodríguez. Al otorgamiento de dicha escritura compareció la F.H.A. (representada por el Sr. Domingo Ortiz) como acreedora hipotecaria del total de la propiedad, a los fines de liberar la parcela segregada de la referida hipoteca. *En este instrumento público, el querellado expuso que dicha finca estaba inscrita a favor de los esposos Cintrón Rodríguez.* Cabe señalar que la inscripción refleja el mismo folio, tomo y número de finca que corresponde a la finca original.[2]

Como ya expresáramos, la Escritura Núm. 112 fue pre-

---

[2] Véase la Escritura de Compraventa Núm. 52 (finca original) inscrita en el Folio 101 del Tomo 76 del Registro de la Propiedad, Sección de Patillas, Finca 2051, Inscripción 11.

sentada al Registro de la Propiedad el 7 de noviembre de 1992. Sin embargo, el 26 de abril de 1995, y conforme surge del Informe de la licenciada Carlos, el abogado querellado solicitó al Registrador de la Propiedad la inscripción de la séptima parte del inmueble dejado por los causantes Juanita Tirado García y Aniceto Tirado Rosario, con un valor de seis mil cuatrocientos veintiocho dólares ($6,428), a favor del licenciado Santiago Tirado. El Registrador de la Propiedad denegó la inscripción. Señaló que, en virtud a lo dispuesto por el Art. 912 del Código Civil, 31 L.P.R.A. sec. 2691, era necesaria la participación del Estado Libre Asociado de Puerto Rico (E.L.A.) en la venta como heredero de Don Aniceto Tirado, ya que éste había fallecido sin ascendientes ni descendientes, y sin parientes dentro del sexto grado de consanguinidad. Como consecuencia de lo anterior, tampoco pudo ser inscrita la Escritura de Compraventa Núm. 121, sobre Hipoteca Voluntaria, otorgada también por los esposos Cintrón Rodríguez el 10 de diciembre de 1992 *por la suma de cuarenta y cinco mil dólares ($45,000)*, a favor de la F.H.A.

Ante tales circunstancias, el 19 de abril de 1996 el abogado querellado se comunicó por escrito con el licenciado Santiago Tirado y le indicó que por equivocación le había entregado la parte del precio de venta de la propiedad que le correspondía a Don Aniceto Tirado, cuando en verdad le correspondía al E.L.A. Según la licenciada Carlos, ese mismo día el querellado asumió la representación legal del licenciado Santiago Tirado y presentó ante el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Patillas, una moción mediante la cual solicitó que la Resolución sobre Declaratoria de Herederos dictada en el Caso Civil Núm. CD 92–91 se enmendara a los fines de que se decretara el E.L.A. como único y universal heredero de Don Aniceto Tirado. El tribunal, sin embargo, declaró sin lugar dicha petición por entender que era el E.L.A. el llamado a

presentar tal solicitud. Dicha resolución fue emitida el 14 de mayo y notificada el 21 de mayo de 1996.

De otra parte, el 15 de mayo de 1996 el querellado también se comunicó con el Sr. Miguel Lefebre, representante en Puerto Rico de la F.H.A. Le expresó el problema surgido en torno a la inscripción de la finca a nombre de los esposos Cintrón Rodríguez y aludió a la deuda hipotecaria asumida por éstos con la F.H.A. respecto a la cual se les había dado hasta el 18 de mayo para ponerla al día, bajo apercibimiento de ejecución. La misiva también hizo referencia al permiso obtenido de la F.H.A. por los esposos Cintrón Rodríguez para segregar y vender un solar a los fines de ponerse al día en el pago de la hipoteca, trámite que se llevó a cabo pero que tampoco había logrado acceso al Registro de la Propiedad.

El 14 de agosto de 1996, mediante carta al licenciado Santiago Tirado, el abogado querellado le informó que, contrario a lo que éste le indicó, se había enterado por terceras personas que Don Aniceto Tirado había sido uno de siete hermanos, de los cuales tres aún estaban vivos, dos habían dejado descendientes y el tercero era viudo. El abogado querellado le indicó que estaba tramitando la declaratoria de herederos de Don Aniceto y solicitó al licenciado Santiago Tirado que le devolviera el dinero en su poder, tres mil dólares ($3,000), que correspondía a los herederos de aquél.

El 3 de septiembre de 1997 el abogado querellado tuvo que autorizar un acta notarial (Escritura Núm. 55) a los fines de aclarar el problema que presentaba la Escritura Núm. 112 de 7 de noviembre de 1992 y solicitar del Registrador de la Propiedad la inscripción a favor de los esposos Cintrón Rodríguez de las seis séptimas partes y la mitad de la otra séptima parte de la propiedad. También la inscripción de la hipoteca voluntaria constituida por los espo-

sos Cintrón Rodríguez a favor de la F.H.A. mediante la Escritura Núm. 121 de 10 de diciembre de 1992.(³)

El 6 de octubre de 1998, el Tribunal de Primera Instancia, Subsección de Distrito de Patillas, dictó una sentencia (caso Civil Núm. CD–97–356) en una acción presentada por los esposos Cintrón Rodríguez, representados por el abogado querellado, contra los herederos de Don Aniceto Tirado, declarados tales por resoluciones del tribunal. En la demanda los esposos Cintrón Rodríguez solicitaron la ayuda del tribunal para lograr completar la transacción de su compra de la participación en la propiedad correspondiente a los herederos de Don Aniceto.

El tribunal concedió lo solicitado y ordenó a los esposos Cintrón Rodríguez que consignaran la suma de tres mil dólares ($3,000), valor de la participación de los herederos de Don Aniceto. Además, ordenó la publicación de edictos.(⁴)

Cumplido lo anterior,(⁵) el tribunal ordenó al Alguacil el otorgamiento de la escritura de la compraventa y al Registrador de la Propiedad la inscripción de dicha participación en la finca a nombre de los esposos Cintrón Rodríguez, de suerte que la totalidad de aquélla quedara inscrita a nombre de ellos.

---

(³) En el inciso Tercero del Acta Notarial, Escritura Núm. 55, específicamente dispuso que "en la declaratoria de Herederos número CD92–91 el compareciente Manuel Antonio Santiago Tirado expresó incorrectamente bajo juramento que Aniceto Tirado, también conocido por Anacleto Tirado no dejó a[s]cendientes ni descendientes hasta el sexto grado de consanguinidad porque en fecha posterior al otorgamiento el notario autorizante se enteró que en realidad el aludido causante tiene cinco hermanos a saber: Toribio Tirado Rosario, Eulogio Tirado Rosario, Juan Tirado Rosario, Bibiano Tirado Rosario y Monserrate Tirado Rosario, los dos últimos fallecidos".

(⁴) En comunicación posterior, los esposos Cintrón Rodríguez insistieron en que las dificultades confrontadas se debieron en parte a la negativa del Lcdo. Manuel A. Santiago Tirado a devolver los tres mil dólares ($3,000) que le habían sido entregados erróneamente por el abogado querellado. Aducen que el Lcdo. Sixto Pabón informó al tribunal que ellos habían consignado los tres mil dólares ($3,000), cosa que niegan expresamente, implicando con esto que se ha estado intentando proteger al Lcdo. Manuel A. García Tirado.

(⁵) Según la Directora de la Oficina de Inspección de Notarías, Lcda. Carmen H. Carlos, los esposos Cintrón Rodríguez niegan que fuesen ellos quienes consignaron los tres mil dólares ($3,000).

Finalmente, el 29 de enero de 1999, ante la notario Lucía Rivera Rivera, se otorgó la Escritura sobre Venta Judicial, mediante la cual los esposos Cintrón Rodríguez adquirieron de los herederos de Don Aniceto Tirado su participación en la finca relativa a la mitad de una séptima parte, con lo cual se completó la inscripción del total de la finca a favor de éstos.

Posteriormente, el 28 de noviembre de 2000 el Registrador de la Propiedad inscribió dicha Escritura sobre Venta Judicial. También quedó inscrita la Escritura Núm. 25 (sobre Segregación, Liberación y Compraventa de 28 de marzo de 1994) mediante la cual los esposos Cintrón Rodríguez habían vendido a los esposos Rodríguez Cintrón la parcela segregada de la finca principal.

Como se podrá observar, es a raíz de todo lo antes expuesto que los esposos Cintrón Rodríguez presentaron la queja que hoy nos ocupa. Como ya expresáramos, su alegación principal se fundamentó en los problemas de crédito que tuvieron con la F.H.A. a consecuencia de la tardanza en la inscripción de las escrituras otorgadas por el licenciado Pabón García.

## II

*"El notario es el testigo por excelencia que ha de dar forma al negocio convenido, y ha de advertir a los otorgantes de los aspectos legales del instrumento que ellos otorgan y que él autoriza."* (Énfasis suplido.) *In re Lavastida et al.*, 109 D.P.R. 45, 86 (1979), opinión del Juez Asociado Señor Irizarry Yunqué. Esto significa que el notario debe ser imparcial con todos los otorgantes del instrumento que autoriza, independientemente de que cualquiera de éstos lo haya contratado como abogado previamente. *In re Colón Ramery*, 133 D.P.R. 555, 563 (1993).

■ El notario, *como representante de la fe pública*, es responsable de conocer el estado registral de la propiedad sobre la cual otorga la escritura. Véanse: *In re Ramos Meléndez y Cabiya Ortiz*, 120 D.P.R. 796, 801 (1988), y casos allí citados. Véanse, además: *In re Jiménez Brackel*, 148 D.P.R. 287 (1999); *In re López Maldonado*, 130 D.P.R. 863, 865 (1992); *Chévere v. Cátala*, 115 D.P.R. 432, 443–445 (1984). Igualmente, *como principal custodio de la fe pública* —*In re Vargas Hernández*, 135 D.P.R. 603 (1994)— tiene el deber de ilustrar a los otorgantes con las explicaciones, las aclaraciones y las advertencias necesarias para lograr el consentimiento informado de éstos al momento del acto notarial. *In re Jiménez Brackel*, supra. Véase, además, *In re Mélendez Pérez*, 104 D.P.R. 770, 776 (1976). En particular, sobre todo, "*a los compradores de la propiedad.* Ello le brinda[ba] la oportunidad a éstos de tomar la decisión que [entiendan] procedente ...". (Énfasis suplido.) *In re Delgado*, 120 D.P.R. 518, 526 (1988). En fin, "[l]a sociedad debe tener en todo notario una garantía de certeza y de limpieza en los actos y contratos cuya autenticación le encomienda ...". *In re Meléndez Pérez*, supra pág. 776. Veamos, pues.

## III

Como ya expresamos, la propiedad adquirida por los esposos Cintrón Rodríguez el 7 de noviembre de 1992 mediante la Escritura de Compraventa Núm. 112 no quedó inscrita a su nombre hasta noviembre de 2000, es decir, ocho años luego de autorizada. Tampoco pudo ser inscrita la hipoteca constituida por éstos a favor de la F.H.A. mediante la Escritura Núm. 121 de 10 de diciembre de 1992. Las razones para la dilación en la inscripción de las escrituras se debieron a una deficiencia señalada por el Registrador de la Propiedad respecto a la Escritura de Compraventa Núm. 112. Es decir, no comparecieron a ésta los causahabientes del Sr. Aniceto Tirado, propietario de la mi-

tad de una séptima parte de la propiedad. El licenciado Pabón García, como notario, cometió el error de hacer comparecer al Lcdo. Manuel Antonio Santiago Tirado como dueño de toda una séptima parte y de entregarle el precio de tres mil dólares ($3,000) correspondiente a Don Aniceto Tirado. Ello a pesar de que del instrumento público se desprende que el licenciado Santiago Tirado había sido declarado heredero con relación a su madre, Juanita Tirado, y no con relación a su viudo, Sr. Aniceto Tirado. Además del problema notarial-registral, las gestiones del querellado para obtener la devolución del dinero no obtuvieron fruto por largo tiempo.

De otra parte, y como alega el querellado, aunque éste hubiese sido llevado por el licenciado Santiago Tirado a pensar que Don Aniceto no tenía pariente alguno, el solo hecho de que la resolución dictada por el foro de instancia el 28 de abril de 1992 (caso Civil Núm. CD–92–91) establecía que éste había fallecido sin herederos, *implicaba que el Estado tenía derechos sobre el caudal relicto*. Esta determinación le constaba al querellado, ya que de la Petición de Declaratoria de Herederos en la cual, como vimos en la relación de hechos, representó al licenciado Tirado Santiago, además de solicitar del tribunal que decretase que el causante (Don Aniceto) no dejó herederos conforme a la ley, solicitó que la participación de él en algún bien que le hubiese pertenecido fuese consignado en el tribunal, y que de no haber reclamación dentro del término, dicha participación fuera asignada a la Universidad de Puerto Rico como está instituido en la ley.[6] Ante este hecho era inexcusable el que el licenciado Santiago Tirado compareciera en la Escritura Núm. 112 en carácter de dueño de toda una séptima parte de la propiedad objeto de la venta a los aquí quejosos y que se hiciese entrega de los referidos tres mil dólares ($3,000).

---

[6] Sin embargo, es justo destacar que sobre este particular el foro de instancia nada dispuso al respecto. Véase esc. 2.

El descubrimiento posterior de los hermanos de Don Aniceto Tirado hizo que el querellado acudiese nuevamente al tribunal para corregir la declaratoria de heredero. Mientras tanto, el 3 de septiembre de 1997 autorizó un acta notarial a los fines de presentar una instancia al Registro de la Propiedad para lograr la inscripción de seis séptimas partes y la mitad de la otra séptima parte de la propiedad a favor de los esposos Cintrón Rodríguez, en conformidad con la Escritura Núm 112.

Finalmente, emitida por el Tribunal de Primera Instancia la declaratoria de herederos enmendada de Don Aniceto, el 8 de octubre de 1998 éste dictó sentencia en el caso Civil CD–97–356, llevado contra los herederos de Don Aniceto por el querellado, ordenando la venta judicial a favor de los esposos Cintrón Rodríguez de la mitad de la séptima parte de la propiedad que no se había podido inscribir a nombre de éstos. A tales fines se consignaron los tres mil dólares ($3,000). La Escritura sobre Venta Judicial no se otorgó hasta el 29 de enero de 1999. La parte correspondiente a los herederos de Don Aniceto no quedó inscrita a favor de los esposos Cintrón Rodríguez hasta el 28 de noviembre de 2000, fecha posterior a la presentación de la queja de epígrafe.

## IV

Como podemos observar, el error o ignorancia inexcusable del querellado fue lo que motivó una dilación de ocho años en el trámite de inscripción de los negocios jurídicos concernidos. Durante ese término, en ocasiones, éste recurrió como abogado y en otras como notario a unos trámites indispensables para corregir su conducta notarial. La dilación no se hubiese producido si el notario Pabón García hubiese cumplido con los deberes principales de indagar la voluntad de los otorgantes, formulado la voluntad inda-

gada, investigado ciertos hechos y datos de los que dependía la eficacia o validez del negocio, y brindado a todos los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendieran el sentido, así como los efectos y consecuencias del negocio, y se dieran cuenta éstos de los riesgos que corrían en celebrarlo. *Chévere v. Cátala,* supra.

Así pues, aunque el licenciado Pabón García logró finalmente la inscripción de la finca principal a favor de los esposos Cintrón Rodríguez, y consecuentemente la inscripción de la parcela segregada a favor de los esposos Rodríguez Cintrón, éste no actuó con la diligencia necesaria al autorizar las Escrituras Núm. 112 ni la Núm. 25 de 28 de marzo de 1994, sobre segregación y compraventa. Respecto a esta última, debió hacer las advertencias legales sobre el estado registral de la finca principal.

■ Las gestiones necesarias para resolver la controversia pueden ser atenuantes, pero no dispensa al licenciado Pabón García de las violaciones éticas en las cuales incurrió. Tampoco precluye el ejercicio de nuestra facultad disciplinaria. *In re Ortiz Velázquez,* 145 D.P.R. 308, 314 (1998).

## V

En vista de lo anterior y tomando en consideración las gestiones que efectuara el licenciado Pabón García para mitigar los posibles daños que su falta pudo haberle causado a los esposos Cintrón Rodríguez, y teniendo en cuenta que éste es el primer incidente del notario, *se le amonesta y se le apercibe que en el futuro seremos más severos en la imposición de medidas disciplinarias, de incurrir en alguna otra falta al deber profesional.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri no intervino.