EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Manuel Santiago Tirado | 2008 TSPR 86 <br><br> 174 DPR \_\_\_\_ |

Número del Caso: CP-2005-13

Fecha: 16 de mayo de 2008

Oficina del Procurador General:

> Lcda. Maite Oronoz Rodríguez
> Subprocuradora General
>
> Lcda. Miriam Soto Contreras
> Procuradora General Auxiliar

Abogado de la Parte Querellada:

> Lcdo. René Arrillaga Beléndez

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Manuel Santiago Tirado                    CP-2005-13


*PER CURIAM*

San Juan, Puerto Rico, a 16 de mayo de 2008


A principios de la década del 1990, el Lcdo. Manuel A. Santiago Tirado[1], promovió ante el entonces Tribunal Superior, Sala de Bayamón, la declaratoria de herederos de su madre, Doña Juana Tirado.[2] El 11 de febrero de 1991 el tribunal de primera instancia emitió una resolución decretando como único y universal heredero de Doña Juana Tirado a su hijo, el licenciado Santiago Tirado, y al viudo, Don

---

[1] La fecha específica no ha podido ser precisada.

[2] El querellado, Lcdo. Manuel A. Santiago Tirado fue admitido al ejercicio de la profesión legal en Puerto Rico el 28 de mayo de 1976. En junio de ese mismo año fue admitido al ejercicio de la notaría. El 15 de junio de 1995 fue nombrado Juez del Tribunal de Primera Instancia, puesto al que renunció, efectivo el 31 de mayo de 2001, para acogerse a los beneficios del retiro.

Aniceto Tirado, en la cuota viudal usufructuaria correspondiente.

Posteriormente, y con el propósito de tramitar la declaratoria de herederos de Don Aniceto Tirado[3], el licenciado Santiago Tirado compareció a la oficina del Lcdo. Sixto Pabón García el 16 de abril de 1992 y suscribió bajo juramento una petición que, en lo concerniente, lee así:

> Que el peticionario es hijo de Juanita Tirado quien fuera la legítima esposa de Aniceto Tirado fallecido el día 31 de mayo de 1978 en la ciudad de Ponce, Puerto Rico, quien dejó bienes ubicados en esta jurisdicción.
>
> Que aunque la madre del aquí peticionario era la legítima esposa del causante, no procrearon hijos ni a dicho causante se le conoce descendientes o ascendientes ni herederos en el grado colateral hasta el sexto grado de consanguinidad.
>
> Que en vista de lo anterior se suplica del Honorable Tribunal decrete que el causante no dejó herederos conforme a la ley y que la participación de él en algún bien que le halla pertenecido sea consignada en el Tribunal y que de no haber reclamación dentro del término de ley dicha participación sea asignada a la Universidad de Puerto Rico como está estatuido en la ley.

En el juramento de dicha petición se hizo constar que lo allí declarado era cierto por constarle, al aquí querellado, de propio y personal conocimiento.[4] Prontamente, la petición juramentada se presentó ante el

---

[3] Tanto Doña Juana Tirado como Don Aniceto Tirado murieron intestados el 14 de diciembre de 1976 y el 31 de mayo de 1978, respectivamente.

[4] El juramento fue reconocido como el affidávit 12,858 del Registro de Testimonios del licenciado Pabón García.

Tribunal de Primera Instancia, Sala de Patillas, quien dictó resolución el 28 de abril de 1992. En su dictamen, el tribunal de instancia estableció que a Don Aniceto no se le conocían herederos según la ley, sin embargo, nada se dispuso sobre el destino de sus bienes.

El 7 de noviembre de 1992, se otorgó, ante el licenciado Pabón García, una escritura pública sobre segregación y compraventa de un inmueble sito en el Barrio Jacaoba de Patillas, Puerto Rico. Doña Juana y Don Aniceto eran codueños de dicho inmueble en una séptima parte. En la referida escritura figuraron como compradores el Sr. Francisco Cintrón Rivera y su esposa la Sra. Fulgencia Rodríguez Ortiz.[5] El licenciado Santiago Tirado compareció al otorgamiento de la escritura como heredero de Juana Tirado. No compareció heredero alguno de Aniceto Tirado, pero, por error, el Notario hizo constar en la escritura que el licenciado Santiago Tirado adquirió por herencia de su madre una séptima parte del inmueble.[6]

El capital para la compra del inmueble se iba a obtener mediante financiamiento, garantizado con hipoteca voluntaria a favor de Farmers Home Administration. Como la escritura de hipoteca no pudo otorgarse en la misma fecha que la de compraventa, al final de ésta última se aclaró

---

[5] El señor Cintrón Rivera fue quien formuló la presente queja.

[6] En relación con los mismos hechos de este caso se tramitó una querella en contra del licenciado Pabón García que fue resuelta mediante opinión de este Tribunal el 6 de febrero de 2002. *In re* Pabón García, 156 D.P.R. 168 (2002).

que los vendedores recibirían el pago correspondiente en los próximos 45 días.

El 10 de diciembre de 1992, los compradores otorgaron la escritura de hipoteca voluntaria a favor de Farmers Home Administration. Cuatro días más tarde, el notario autorizante, licenciado Pabón García, hizo entrega al licenciado Santiago Tirado de un cheque por la suma de $5,600, por la participación que pertenecía a éste en el inmueble. En el talonario de dicho instrumento se indicaba que el total era $6,000 y que se le dedujeron $400 en concepto de un solar que se le había adjudicado al licenciado Santiago Tirado al otorgarse la escritura de compraventa. En la suma de dinero que se le entregó al referido abogado Santiago Tirado, por error, el Notario incluyó la parte que correspondía a la sucesión de Aniceto Tirado, a la cual el querellado no tenía derecho alguno.[7]

Al presentarse la escritura de compraventa al Registro de la Propiedad, el Registrador denegó su inscripción porque se hacía necesaria la participación del Estado Libre Asociado como heredero de Aniceto Tirado, por razón de que éste falleció sin dejar descendiente, ascendiente, ni parientes colaterales hasta el sexto grado de consanguinidad. En ánimo de corregir la deficiencia señalada, el licenciado Pabón García intentó enmendar la declaratoria de herederos de Aniceto Tirado. La petición

---

[7] La suma que le correspondía a la sucesión de Aniceto Tirado y, por ende, la cantidad entregada erróneamente al licenciado Santiago Tirado ascendía a $3,000.

de enmienda fue declarada sin lugar, resolviendo el tribunal que correspondía al Estado Libre Asociado promoverla.

El 15 de mayo de 1996, el licenciado Pabón García le escribió al Sr. Miguel Lefebre, de Farmers Home Administration, informándole sobre la situación que había impedido inscribir la escritura de hipoteca. En la referida comunicación se hizo constar que al licenciado Santiago Tirado se le entregó su participación más los $3,000 que correspondían a los causahabientes de Don Aniceto. Copia de esta carta fue enviada al licenciado Santiago Tirado mediante correo certificado.

El 14 de agosto de 1996, el licenciado Pabón García escribió otra carta, esta vez dirigida al querellado, en la cual le recordó que se le habían entregado $3,000 que correspondían a la sucesión de Aniceto Tirado. Mediante la referida carta, a su vez, el notario le exigió al licenciado Santiago Tirado la devolución del dinero y le indicó que, como resultado de una investigación, se enteró que Don Aniceto era uno de siete hermanos de los cuales aún tres vivían, dos habían dejado descendientes y otro falleció sin procrear hijos. Además de los requerimientos por escrito, en una o dos ocasiones ambos abogados dialogaron por teléfono sobre el asunto.[8] El licenciado

_____

[8] Debemos indicar que todos los requerimientos hechos al licenciado Santiago Tirado para que devolviese el dinero que le fue erróneamente entregado fueron de naturaleza extrajudicial, es decir, nunca fue demandado civilmente ni se le presentó denuncia criminal alguna.

Santiago Tirado, insistió que, en relación con el dinero que equivocadamente él había recibido, se le tenía que reconocer un crédito por los gastos en que había incurrido para el funeral de su padrastro, Don Aniceto Tirado.

Luego de varios trámites judiciales y notariales, el licenciado Pabón García finalmente logró que tanto la escritura de compraventa como la de hipoteca tuvieran acceso al Registro de la Propiedad. Como parte de tales gestiones, el licenciado Pabón García consignó en el tribunal de instancia, de su propio caudal, la suma de $3,000 que le correspondían a la sucesión de Aniceto Tirado, dinero que el querellado se negaba devolver.

El presente caso se inició mediante una queja presentada cuando el querellado fungía como Juez del Tribunal de Primera Instancia. Por ende, el asunto fue inicialmente investigado por la Oficina de Administración de los Tribunales. Dicha Oficina rindió un informe, dirigido a este Tribunal, en el cual recomendó considerar la destitución de Santiago Tirado como juez. En ese momento, trasladamos la queja a la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones.

Mientras el caso se encontraba ante la consideración de la Comisión de Disciplina, la entonces Gobernadora de Puerto Rico, Hon. Sila María Calderón, aceptó la renuncia como juez del licenciado Santiago Tirado, quien se acogió

a los beneficios del retiro. Oportunamente, el hoy querellado solicitó la desestimación de la querella aduciendo falta de jurisdicción de la Comisión de Disciplina. En atención a tal petición, este Tribunal ordenó el archivo de la querella. El fundamento de dicha determinación fue que la Comisión de Disciplina no tenía jurisdicción para dilucidar la querella una vez Santiago Tirado se retiró de la judicatura.

No obstante, este Tribunal refirió el asunto al Procurador General para que presentara las querellas correspondientes por violación a los Cánones de Ética Profesional, a la luz de los hallazgos realizados por la Oficina de Administración de los Tribunales en la investigación de la queja de epígrafe. En cumplimiento al mandato recibido, el Procurador General presentó una querella imputándole al licenciado Santiago Tirado haber violentado el Canon 35 de Ética Profesional por juramentar la declaratoria de herederos de Aniceto Tirado, negando que éste tuviese herederos a pesar de conocer de la existencia de parientes colaterales vivos. Además, el Procurador General le imputó al abogado querellado no esforzarse por exaltar el honor y la dignidad de la profesión y conducirse de forma aparentemente impropia, vulnerando de este modo el Canon 38 de Ética Profesional. Oportunamente, el querellado presentó contestación a la querella instada. En su contestación, indicó que nunca conoció ni tuvo contacto con pariente alguno de Don

Aniceto, razón por la cual no mintió en la declaratoria de herederos.

Así las cosas, nombramos Comisionado Especial al Lcdo. Enrique Rivera Santana para que escuchara la prueba, formulara determinaciones de hechos y sometiera las recomendaciones que entendiera procedentes. Luego de varios incidentes procesales se celebró la vista en su fondo del caso de epígrafe.[9]

El 6 de noviembre de 2006, el Comisionado Especial sometió ante este Tribunal su informe. En el mismo, luego de relatar los hechos previamente reseñados, concluyó que el licenciado Santiago Tirado debería ser exonerado del cargo que se le imputó respecto a la violación del Canon 35 de Ética Profesional. Sin embargo, recomendó sancionar al querellado por infringir el Canon 38, al no restituir el dinero que se le entregó en exceso y al que no tenía derecho. Con el beneficio del informe del Comisionado, resolvemos.

I

El Canon 35 de Ética Profesional, 4 L.P.R.A. Ap. IX, exige que la conducta de los miembros de la profesión legal ante los tribunales, para con sus representados y en

---

[9] La prueba oral consistió en los testimonios de los licenciados Sixto Pabón García y Santiago Tirado. También se estipuló como testimonio, una deposición del Lcdo. Iván Vélez Quirós, quien acompañó al querellado a recoger el cheque a la oficina del licenciado Pabón García. Por último, se presentó cuantiosa prueba documental que forma parte del expediente.

las relaciones con sus compañeros, sea una sincera y honrada. Añade el precepto, que no es sincero ni honrado utilizar medios inconsistentes con la verdad, ni se debe inducir a error al juzgador utilizando artificios o una falsa relación de los hechos o del derecho. Dichos deberes se exigen en aras de preservar el honor y la dignidad de la profesión, ya que el compromiso del abogado con la verdad es uno siempre incondicional. *In re* Fernández de Ruiz, res. el 21 de abril de 2006, 2006 T.S.P.R. 73. La verdad es un atributo inseparable del ser abogado, y sin ésta, la profesión jurídica no podría justificar su existencia. *In re* Busó Aboy, res. el 26 de octubre de 2005, 2005 T.S.P.R. 162.

Al respecto, reiteradamente hemos expresado que el Canon 35 exige que la conducta de todo miembro de la profesión ante los tribunales, sea sincera y honrada. *In re* López González, res. el 11 de junio de 2007, 2007 T.S.P.R. 120. Esto en virtud de que todo el entramado de nuestro sistema judicial se erige sobre la premisa de que los abogados, sobre quienes recae principalmente la misión de administrar la justicia, han de conducirse siempre con integridad ante los foros judiciales. *In re* Montañés Miranda, 157 D.P.R. 275 (2002). En fin, un abogado que falta a la verdad infringe el Canon 35, independientemente de los motivos que lo movieron a incurrir en esa conducta o de que no se hubiera perjudicado a tercero alguno. *In re*

Grau Acosta, res. el 20 de septiembre de 2007, 2007 T.S.P.R. 170.

Por otro lado, el Canon 38 del Código de Ética Profesional, ante, le exige a todos los abogados la preservación del honor y dignidad de la profesión, aunque ello conlleve sacrificios personales. Además, proscribe que éstos incurran en cualquier conducta de apariencia impropia. Es oportuno señalar que este Canon opera *ex propio vigore*, es decir, la apariencia de conducta impropia constituye una base independiente de evaluación de la responsabilidad profesional. Véase: *In re Pérez Rodríguez*, res. el 7 de diciembre de 2007, 2007 T.S.P.R. 217; *In re Gordon Menéndez*, res. 1 de junio de 2007, 2007 T.S.P.R. 108.

Infringir el Canon 38 resulta nocivo al respeto que la ciudadanía deposita en las instituciones de justicia y la confianza que los clientes depositan en los abogados. *In re Sepúlveda Girón*, 155 D.P.R. 345 (2001); *In re Pérez Rodríguez*, ante. Por razón de la confianza depositada en los miembros de la ilustre profesión, todo abogado, tanto en su vida privada como en el desempeño de su profesión, debe esforzarse al máximo de su capacidad para cumplir con los principios éticos. *In re Barreto Ríos*, 157 D.P.R. 352 (2002). No existe dicotomía alguna entre la vida cotidiana del abogado y el ejercicio de la profesión. *In re Sepúlveda Girón*, ante.

Ahora bien, no nos incumbe cualquier tipo de conducta privada del abogado, sino aquella que lo haga indigno de pertenecer al foro o que afecte sus cualidades morales. *In re López González*, ante. En ese sentido, hemos resuelto que mediante un procedimiento disciplinario, más allá de sancionar al abogado por la falta cometida, procuramos proteger a la comunidad y a la profesión mediante una investigación de las condiciones morales del querellado, para determinar si éste puede y debe continuar ejerciendo la honrosa profesión a la cual fue admitido por este Tribunal. *In re Vélez Lugo*, 162 D.P.R. 735 (2004).

Por último, es norma conocida que le corresponde al Comisionado Especial recibir la prueba y dirimir la evidencia conflictiva. *In re Morales Soto*, 134 D.P.R. 1012 (1994); *In re Gordon Menéndez*, ante. El Comisionado Especial, de ordinario, está en mejor posición para aquilatar la prueba testifical y sus determinaciones fácticas merecen nuestra mayor deferencia. *In re Soto López*, 135 D.P.R. 642 (1994); *In re Pagán Pagán*, res. el 8 de agosto de 2007, 2007 T.S.P.R. 151. Aun cuando este Tribunal no está obligado a aceptar el informe de un Comisionado Especial nombrado para atender una querella contra un abogado, por lo que tiene la facultad para adoptar, modificar o rechazar sus recomendaciones, de ordinario sostenemos las conclusiones de hecho de un Comisionado Especial salvo que se demuestre prejuicio,

parcialidad o error manifiesto. *In re* Morell Corrada, 158 D.P.R. 791 (2003).


II

A

El Procurador General es del criterio que la conducta desplegada por el licenciado Santiago Tirado constituye una violación al Canon 35 del Código de Ética Profesional, ante. Fundamenta su determinación en que el querellado juramentó la petición de declaratoria de herederos de Don Aniceto Tirado negando que éste tuviera herederos, cuando en efecto tenía conocimiento de la existencia de parientes colaterales vivos. Explica, además, que dicha declaración falsa pudo haber tenido consecuencias adversas e injustas, en la medida que afecta los derechos sucesorios de esos herederos. Finalmente, afirma que la conducta observada por el querellado desató una serie de complicaciones en el caso.

Por su parte, el licenciado Santiago Tirado informó que su madre contrajo nupcias con Don Aniceto cuando él apenas tenía cinco o seis años de edad. Añadió, que para ese entonces residían en el Barrio Jacaoba de Patillas. A pesar de ello, Don Aniceto trabajaba en fincas agrícolas en los Estados Unidos de América y se pasaba la mayor parte del año fuera de Puerto Rico. Venía a la Isla por cortos lapsos de tiempo y regresaba a su trabajo en el continente. Afirma el querellado que cuando tenía

aproximadamente 9 años de edad se trasladó a vivir, junto a su madre y padrastro, al estado de Florida. En dicho lugar residió hasta que cumplió 17 años, cuando regresó a Puerto Rico a vivir con una pariente en el área de Puerto Nuevo. Finalmente, asevera que nunca conoció ni vivió con familiar alguno de su padrastro. Por lo tanto, sostiene que no mintió en la petición jurada de la declaratoria de herederos en la cual afirmó que a Don Aniceto no se le conocía ascendiente, descendiente o colaterales hasta el sexto grado de consanguinidad. Enfatiza que nunca afirmó que el causante no tuviera herederos.

El Comisionado le dio entera credibilidad al testimonio del querellado sobre este respecto. Además, expuso que el testigo del Procurador General, licenciado Pabón García, declaró que sólo infirió, al aparecer los colaterales, que el licenciado Santiago Tirado "debía de saberlo". En consecuencia, el Comisionado concluyó que no hubo prueba clara, robusta y convincente para establecer una violación al Canon 35.

Por ser del criterio que el Comisionado, en este aspecto, no incurrió en perjuicio, parcialidad o error manifiesto, sostenemos como correctas las determinaciones de hechos del Comisionado. No se infringió el Canon 35 en el presente caso.

B

Distinta es la situación en cuanto al Canon 38 de Ética Profesional, ante. Se le imputa al querellado haber

retenido una suma de dinero que no le correspondía, a pesar de las innumerables comunicaciones y requerimientos que le hiciera el licenciado Pabón García al respecto. No podemos perder de vista que la conducta del querellado contribuyó a que los compradores de la propiedad en controversia sufrieran pérdidas y daños que consistieron en retrasos en el pago de la hipoteca y apercibimientos de ejecución. Por tales razones, el Procurador General entiende que el licenciado Santiago Tirado incurrió en conducta de apariencia impropia, al mismo tiempo que falló en exaltar el honor y la dignidad de la profesión legal, violatoria dicha conducta del Canon 38.

El querellado alega que no devolvió el dinero porque tenía derecho a que se le reembolsaran los gastos fúnebres de su padrastro. Ignora el hecho de que, siendo abogado, no los reclamó de la forma legalmente correcta, ni de las personas que en derecho hubieran estado obligadas a reembolsarle los gastos. Como expone el Comisionado, el querellado se escudó en un error del licenciado Pabón García, al entregarle una suma mayor de la que le pertenecía, para retener, sin excusa legal válida, el dinero que se le pagó en exceso. Peor aún, el querellado recibió el dinero --el cual no le pertenecía-- en el año 1992 y no fue hasta agosto de 2006, mes en que se celebró la vista en su fondo sobre esta querella, que devolvió solamente la mitad de la suma en controversia.

Ciertamente, la actuación del licenciado Santiago Tirado no exalta el honor y la dignidad de la profesión. Era su deber, legal y moral, devolver el dinero que le fue entregado erróneamente. Por consiguiente, su conducta adolece de una seria impropiedad e irresponsabilidad. Si entendía que poseía un crédito contra la sucesión por los gastos fúnebres en que incurrió, debió haber procedido legalmente y no tomar la justicia en sus manos. Tal comportamiento merece que sea sancionado, aun cuando los hechos tuvieron lugar en el ámbito de su vida privada, ya que éstos afectan sus cualidades morales. *In re* López González, ante.

### III

Por todo lo expuesto, resolvemos que el querellado infringió las disposiciones del Canon 38 del Código de Ética Profesional. En consecuencia, procede decretar la suspensión del licenciado Manuel Santiago Tirado del ejercicio de la abogacía por el término de seis meses, contado dicho término a partir de la fecha en que la Sentencia en el presente caso advenga final y firme. Además, le ordenamos que dentro del referido término devuelva al licenciado Pabón García el dinero que recibió en exceso por concepto de su herencia, y que al día de hoy no ha reembolsado. Apercibimos, a su vez, al licenciado Santiago Tirado de que en el futuro se ciña estrictamente a las disposiciones del Código de Ética Profesional.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*

Manuel Santiago Tirado                CP-2005-13

SENTENCIA

San Juan, Puerto Rico, a 16 de mayo de 2008

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual forma parte íntegra de la presente, se dicta Sentencia decretando la suspensión de Manuel Santiago Tirado del ejercicio de la abogacía por el término de seis meses, contado dicho término a partir de la fecha en que la Sentencia en el presente caso advenga final y firme. Además, le ordenamos que dentro del referido término devuelva al Lcdo. Sixto Pabón García el dinero que recibió en exceso por concepto de su herencia, y que al día de hoy no ha reembolsado. Apercibimos, a su vez, al licenciado Santiago Tirado de que en el futuro se ciña estrictamente a las disposiciones del Código de Ética Profesional.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo