AB-98-52                                                                1

En el Tribunal Supremo de Puerto Rico

| IN RE:<br><br>MARK C. JIMENEZ BRACKEL<br>    Querellado | CONDUCTA<br>PROFESIONAL<br><br>99TSPR73 |
| --- | --- |

Número del Caso: AB-98-52

Abogados de la Parte Querellante: Lic. Carmen H. Carlos
Directora
Oficina Inspección de Notarías

Abogados de la Parte Querellada: Por derecho propio

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior

Juez del Tribunal de Primera Instancia:

Tribunal de Circuito de Apelaciones:

Juez Ponente:

Fecha: 5/11/1999

Materia:

Este documento constituye un documento oficial del Tribunal
Supremo que está sujeto a los cambios y correciones del
proceso de compilación y publicación oficial de las
decisiones del Tribunal. Su distribución electrónica se hace
como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:


Mark C. Jiménez Brackel
                                    AB-98-52




PER CURIAM




San Juan, Puerto Rico, a 11 de mayo de 1999



**El ejercicio de la abogacía y el del notariado son dos cosas distintas. El abogado notario ha de ser escrupuloso en deslindar los campos. El abogado representa los intereses de un cliente. El notario no representa a cliente alguno. Representa la fe pública. Es el testigo por excelencia que ha de dar forma al negocio convenido, y ha de advertir a los otorgantes de los aspectos legales del instrumento que ellos otorgan y que él autoriza. El notario no es, en esa función, abogado de ninguno de los otorgantes.** (Énfasis nuestro.) <u>In re Lavastida et al.</u>, (Op. del Juez Asociado señor Irizarry Yunqué), 109 D.P.R. 45, 86, (1979).

I

El 10 de marzo de 1998, los esposos José R. Martínez Cardec e Inés M. Ramírez Pérez (en adelante los quejosos) presentaron una queja contra el Lcdo. Mark C. Jiménez Brackel.  Alegaron que el licenciado Jiménez Brackel violó la fe pública notarial y el deber de informar al preparar y autorizar la Escritura de Compraventa Núm. 57 de 29 de abril de 1992, otorgada ante él por el Sr. Hiram Vega Flores, como vendedor y los quejosos como compradores.  En particular, le imputaron certificar que la propiedad comprada por éstos estaba libre de gravámenes, cuando la misma tenía una hipoteca inscrita por la suma principal de doce mil dólares ($12,000), con intereses pactados al diez por ciento (10%). Dicha hipoteca fue autorizada mediante la Escritura Núm. 4, de 13 de marzo de 1990, otorgada por el notario Juan Carlos Pou Martínez, a favor de los esposos, Roberto Dávila Rodríguez y Emelie E. Ríos Gautier (en adelante esposos Dávila Ríos).  Sostuvieron que esta falta de diligencia los puso en riesgo de perder su propiedad.

El querellado contestó la queja y remitimos el asunto a la Lcda. Carmen H. Carlos, Directora de la Oficina de Inspección de Notarías. Con el beneficio de su informe y demás documentos que obran en autos exponemos los hechos relevantes al asunto que nos ocupa:

II

Los esposos José O. Rivera Martínez y Ramona E. De León Meléndez (en adelante demandados) constituyeron una segunda hipoteca sobre una residencia de su propiedad, ubicada en la Urb. El Plantío en Toa Baja, para garantizar un pagaré al portador por once mil quinientos dólares

($11,500), con intereses anuales al once punto cinco por ciento (11.5%), que vencía el 4 de marzo de 1989.[1]

Llegada la fecha de vencimiento del pagaré, los demandados incumplieron con el pago. Así pues, el Sr. Edmundo Rodríguez, portador del pagaré, a través de su abogado, el Lcdo. Manuel Rivera Meléndez, los demandó en cobro de dinero y ejecución de hipoteca. La acción fue presentada en el entonces Tribunal Superior, Sala de Bayamón, Caso Civil Núm. 89-2819, Edmundo Rodríguez v. José Rivera Martínez y otros. Las partes sometieron un acuerdo para el pago de la deuda, el cual fue aprobado por el tribunal mediante sentencia por estipulación notificada el 16 de marzo de 1990.

El 13 de marzo de 1990 y antes de que fuera notificada la sentencia por estipulación, los demandados otorgaron otro pagaré por doce mil dólares ($12,000) con intereses anuales al diez por ciento (10%), garantizado por una tercera hipoteca sobre la misma propiedad. El pagaré fue suscrito a favor de los esposos Dávila Ríos. Se presentó esta hipoteca en el Registro de la Propiedad el 16 de marzo de 1990.[2]

Los demandados no hicieron los pagos estipulados por lo que el señor Rodríguez solicitó al tribunal de instancia que ordenara entonces la ejecución de la sentencia mediante la venta de la propiedad en pública subasta. El tribunal accedió a lo solicitado.

En la gestión de conseguir la certificación registral para llevar a cabo la ejecución de la propiedad, el señor Rodríguez advino en conocimiento de la existencia de la tercera hipoteca que gravaba la propiedad, y que garantizaba el pagaré otorgado en 1990, a favor de los esposos Dávila Ríos o su orden.

El abogado del señor Rodríguez, Lcdo. Manuel Rivera Meléndez, alegadamente hizo las gestiones pertinentes para conseguir la dirección

---

[1] Esta propiedad es la que posteriormente adquieren los quejosos.
[2] Según el informe de la Directora de la Oficina de Inspección de Notarías, al momento de presentarse esta tercera hipoteca, no se había registrado anotación preventiva de demanda en los asientos de la finca hipotecada.

de los esposos Dávila Ríos para notificarles del proceso.[3] Sin embargo, al no conseguir la información procedió a gestionar la notificación por edicto. Esto último, sin la autorización del tribunal. El señor Rodríguez, a través de su abogado, emplazó por edicto a los esposos Dávila Ríos como acreedores posteriores con derecho a comparecer a la subasta.

La subasta fue celebrada el 10 de septiembre de 1991. En ésta, la propiedad le fue adjudicada al Sr. Hiram Vega Flores, cliente del querellado licenciado Jiménez Brackel. El 17 de septiembre de 1991, dicho licenciado otorgó la Escritura Núm. 131 de 17 de septiembre de 1991. En el instrumento se solicitó la cancelación de todos los gravámenes o cargas, hipotecas, avisos de demanda, embargos estatales o federales que surgieran de sus libros con carácter o rango posterior a la inscripción de la hipoteca ejecutada.

En esa misma fecha y en el Caso Civil Núm. 89-2819, Edmundo Rodríguez v. José O. Rivera Martínez y otros, sobre cobro de dinero y ejecución de hipoteca, el licenciado Jiménez Brackel solicitó al tribunal, mediante moción al efecto, la cancelación de los gravámenes posteriores e inscripciones sobre el inmueble adquirido por su cliente. En particular, en su moción expresó lo siguiente:

> 2. Que al momento de ejecutarse la hipoteca... existía [el siguiente gravamen:]
>
> Hipoteca a favor de Roberto Dávila Rodríguez y Emily [sic] Edna Ríos Gautier por la suma de [doce mil dólares] $12,000.00 devengando intereses al [diez por ciento] 10% anual y vencimiento a la presentación, según consta de la escritura número 4, otorgada el 13 de marzo de 1991, ante el Notario Público Juan Carlos Pou Martínez.

---

[3] Conforme surge de los documentos que obran en autos, específicamente, de la sentencia emitida por el Tribunal de Circuito de Apelaciones, Circuito Regional de Bayamón, de 30 de septiembre de 1997, el señor Rodríguez sostuvo que su abogado, Lcdo. Manuel Rivera Meléndez, llamó a la oficina del notario que intervino en la ejecución de la hipoteca para averiguar la dirección de los Dávila Ríos, pero que éste no logró conseguirlo. El notario, que también es el abogado de los esposos Dávila Ríos, según el tribunal, negó haber recibido llamada telefónica alguna del licenciado Rivera Meléndez. Señaló que de haber recibido la llamada, la hubiese contestado.

3. Que dicho gravamen posterior fue debidamente notificado mediante edicto publicado por la parte demandante y/o carta [c]ertificada.

4. Que habiéndose acreditado la publicación y notificación a los acreedores posteriores a la hipoteca ejecutada en el presente caso, así como lo resuelto por nuestro Honorable Tribunal Supremo en el caso Housing Investment Corp. vs. Honorable Registrador de la Propiedad de Bayamón, Sección Primera, Colegio de Abogados Sección 1980-95 [sic] procede que se elimine la inscripción de dicho gravamen….[4]

Sin que el tribunal hubiese hecho determinación alguna en cuanto a dicha moción, el 29 de abril de 1992 el Sr. Hiram Vega Flores vendió la propiedad a los quejosos. Como mencionáramos al principio, para el perfeccionamiento de la compraventa se contrató al licenciado Jiménez Brackel, quien otorgó la Escritura de Compraventa Núm. 57. En dicha escritura el licenciado Jiménez Brackel hizo constar que la propiedad estaba libre de cargas y gravámenes, salvo una primera hipoteca ascendente a treinta y siete mil cuatrocientos dólares ($37,400), que se cancelaría como parte del negocio. **En ningún momento se le advirtió a las partes ni se hicieron reservas algunas sobre la solicitud de cancelación de gravámenes posteriores presentada por el propio notario autorizante.** Con arreglo a la escritura, se vendía, cedía y transfería a los compradores, y éstos compraban y adquirían el inmueble, libre de cargas y gravámenes, salvo la hipoteca anteriormente mencionada, gravamen que se consignaba en la cláusula sexta de la escritura en cuestión. El vendedor, por su parte, asumía una obligación de evicción y saneamiento.

Así las cosas, el 23 de septiembre de 1992 los esposos Dávila Ríos presentaron una demanda de intervención y solicitud de remedios al amparo de los Arts. 149 y 224 de la Ley Hipotecaria y del Registro de la Propiedad de 1979, según enmendada, 30 L.P.R.A. secs. 2473 y 2724.

---

[4] Como se puede observar, en esta moción el notario querellado alude expresamente al gravamen posterior constituido a favor del Sr. Roberto Dávila y su esposa Emelie Ríos, según consta de la Escritura Núm. 4 otorgada el 13 de marzo de 1991. Ciertamente, ya desde el 17 de septiembre de 1991, el licenciado Jiménez Brackel, conocía de la existencia de este gravamen posterior y de la no cancelación.

Alegaron que eran acreedores posteriores y se opusieron a la cancelación de su hipoteca ya que no habían sido notificados de la ejecución a tenor con las Reglas de Procedimiento Civil, según lo requería el Art. 149 de la Ley Hipotecaria. En la súplica de la demanda solicitaron la anulación de la subasta celebrada el 17 de septiembre de 1991. También solictaron que se les permitiese hacer uso del derecho que les reconocía el Art. 224 de la Ley Hipotecaria, o que se establecieran los daños sufridos por ellos como consecuencia de la falta de notificación conforme a derecho. Se señaló vista para el 18 de octubre de 1992, a la que comparecieron las representaciones legales de los interventores, esposos Dávila Ríos, del demandante ejecutante, Edmundo Rodríguez y del adjudicatario, Hiram Vega Flores. **Este último compareció representado por el licenciado Jiménez Brackel**.

El 25 de julio de 1995, el tribunal de instancia emitió una sentencia a favor de los interventores. Concluyó que bajo el Art. 149 de la Ley Hipotecaria, el acreedor ejecutante tenía la obligación de notificar a los interventores mediante emplazamiento personal. En consecuencia, denegó cancelar el asiento registral correspondiente a la hipoteca de los esposos Dávila Ríos.

El acreedor ejecutante, Edmundo Rodríguez, solicitó oportunamente reconsideración, pero fue declarada no ha lugar. El Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) confirmó la sentencia recurrida.

Apoyados por la sentencia a su favor, los esposos Dávila Ríos se personaron en la residencia de los quejosos. Allí le informaron a éstos del gravamen que la propiedad tenía a su favor y de los años que habían tenido que litigar para que se les reconociera su derecho.

Los quejosos, sorprendidos por lo ocurrido, responsabilizaron al licenciado Jiménez Brackel por no haberles informado la realidad registral del inmueble adquirido al momento de la compra. También se quejaron de que el licenciado Jiménez Brackel nunca les informó del litigio que se suscitó con motivo del crédito hipotecario.

El licenciado Jiménez Brackel, por su parte, expresó que, inmediatamente después de la presentación de la queja en su contra, se reunió con el Lcdo. Manuel Rivera Meléndez, abogado del acreedor ejecutante Edmundo Rodríguez, y con el Lcdo. Carlos R. Ríos Gauthier, abogado de los interventores acreedores posteriores, los esposos Dávila Ríos, a los fines de buscar una solución al problema. Tras un proceso de negociación, se llegó a una transacción que comprendió el pago de trece mil dólares ($13,000) a los acreedores Dávila Ríos, pagadero por partes iguales por el licenciado Rivera Meléndez y por el cliente del notario querellado, Sr. Hiram Vega Flores. El 26 de marzo de 1998, se concretó el pago a los interventores Dávila Ríos y una vez se entregó el pagaré original, el 6 de abril de 1998, el licenciado Jiménez Brackel otorgó la Escritura Núm. 44, mediante la cual se solicitó la cancelación del gravamen al Registrador de la Propiedad. También, como parte del acuerdo, los acreedores desistieron de su acción por conducto de su abogado.


II

El notario tiene la indeclinable obligación de conocer el estado registral de la propiedad sobre la cual otorga la escritura. Goenaga v. O'Neill de Milán, 85 D.P.R. 170, 194 (1962); Véanse, además: In re Ramos Meléndez y Cabiya Ortiz, 120 D.P.R. 796, 801 (1988); Chévere v. Cátala, 115 D.P.R. 432, 443-45 (1984); e In re López Maldonado, 130 D.P.R. 863, 865 (1992). Como principal custodio de la fe pública, base esencial del sistema del notariado, tiene el ineludible deber de ilustrar a los otorgantes para lograr que éstos concurran al acto notarial en un estado de conciencia informada. In re Meléndez Pérez, 104 D.P.R. 770, 776 (1976). Véase, también, In re Vargas Hernández, P.C. de 30 de marzo de 1994, 135 D.P.R.___ (1994), 94 JTS 54, pág. 11797. Es decir, tiene que cerciorarse de hacerle a las partes todas aquellas explicaciones, aclaraciones y advertencias necesarias para lograr el consentimiento informado de los otorgantes.

También, debe propiciar y cerciorarse de que los contratantes tengan una conciencia informada con relación al negocio jurídico que llevan a cabo. El ocultar o el no advertir sobre el hecho de que la propiedad tiene un gravamen pendiente de cancelación por orden del tribunal, lo convierte en un "coautor de un consentimiento enfermo e ineficaz en derecho y habrá traicionado la fe de la que es principal guardador". In re Meléndez Pérez, supra.

En cuanto a la imparcialidad del notario, hemos expresado que ésta debe permear sobre todos los otorgantes del instrumento que autoriza. Independientemente de que uno de los otorgantes lo haya contratado como abogado previamente, tiene la obligación de asesorar a todos los otorgantes por igual. No puede, bajo circunstancia alguna, inclinar la balanza a favor de uno u otro de los otorgantes por el mero hecho de que su cliente de asesoría sea parte. In re Colón Ramery, Op. de 8 de junio de 1993, 133 D.P.R.____(1993), 93 JTS 91, pág. 10797. Sobre el particular, en In re Delgado, 120 D.P.R. 518 (1988), expresamos que, el deber de un notario es "ilustrar y explicarle la situación a todas las partes envueltas en la transacción, **en específico, a los compradores de la propiedad.** Ello le [brinda] la oportunidad a éstos de tomar la decisión que [entiendan] procedente...."

Al analizar los hechos expuestos debemos tomar en consideración que "**[la] sociedad debe tener en cada notario una garantía de certeza y de limpieza en los actos y contratos cuya autenticación le encomiendan....**" In re Meléndez Pérez, supra. Conforme a la situación fáctica de este caso, se desprende que el licenciado Jiménez Brackel otorgó una escritura de compraventa en la que hizo constar que la propiedad objeto de la transacción salvo una primera hipoteca que se cancelaría como parte del negocio, estaba libre de carga o gravamen. Esto, a sabiendas de que la propiedad tenía un gravamen pendiente de cancelación por orden del tribunal. Véase, nota al calce Núm. 4. Es evidente que el licenciado Jiménez Brackel actuó al margen de la ética notarial al no haber desplegado **con imparcialidad** su deber de informar

y asesorar a los otorgantes, en particular a los quejosos, sobre el gravamen que tenía la propiedad y el litigio suscitado a consecuencia de dicho gravamen.

Es menester señalar, sin embargo, que una vez presentada la queja, el licenciado Jiménez Brackel hizo todas las gestiones necesarias para resolver la controversia, y finalmente se logró un acuerdo para que se cancelara el gravamen.  Sobre este particular hay que destacar que, lo anterior puede ser un atenuante, pero no lo dispensa de las violaciones éticas en las cuales incurrió.  Tampoco precluye el ejercicio de nuestra facultad disciplinaria.  Véanse, In re Ortiz Velázquez, P.C. de 15 de abril de 1998, 145 D.P.R.___ (1998), 98 JTS 42, pág. 812; In re Verdejo Roque, P.C. de 18 de marzo de 1998, 145 D.P.R. (1998), 98 JTS 30, pág.711 e In re Fernández Paoli, P.C. de 6 de junio de 1996, 141 D.P.R. ___ (1996), 96 JTS 87, pág. 1258.

En vista de lo anterior y tomando en consideración las gestiones que efectuara el licenciado Jiménez Brackel para mitigar los posibles daños que su falta pudo haberle causado a los quejosos, se dictará sentencia en la que se suspende del ejercicio de la notaría por el término de tres (3) meses.  Se le apercibe que en el futuro seremos más severos en la imposición de medidas disciplinarias, de incurrir en alguna otra falta al deber profesional.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:


 Mark C. Jiménez Brackel
                                    AB-98-52




                            SENTENCIA


        San Juan, Puerto Rico, a 11 de mayo de 1999


        Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte de la presente, se decreta la suspensión inmediata del ejercicio de la notaría del Lcdo. Mark C. Jiménez Brackel por el término de tres (3) meses y hasta que otra cosa disponga este Tribunal.  El Alguacil del Tribunal se incautará inmediatamente de su obra y sello notarial para el trámite de rigor correspondiente por la Directora de Inspección de Notarías.  Se le apercibe además que en el futuro seremos más severos en la imposición de medidas disciplinarias, de incurrir en alguna otra falta al deber profesional.

        Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.  El Juez Asociado señor Negrón García hace constar que suspendería al abogado notario por un término de seis (6) meses.  El Juez Presidente señor Andréu García no interviene.


                        Isabel Llompart Zeno
                     Secretaria del Tribunal Supremo