per curiam:
El Ledo. Rafael Torres Alicea fue admitido al *458 ejercicio de la abogacía el 20 de enero de 1989 y el 28 de febrero de ese mismo año al ejercicio de la notaría.
El pasado 6 de julio de 2006, la Sra. Laura E. Martínez Morales presentó ante este Tribunal una queja contra el licenciado Torres Alicea. En ésta alegó que el notario de epígrafe autorizó la Escritura de Compraventa Número 16, mediante la cual sus padres, el fenecido Sr. Emmanuel Martínez Rodríguez y la Sra. Paz Morales Rodríguez, ad-quirieron un inmueble sito en Río Piedras. En dicho ins-trumento público, el licenciado Torres Alicea consignó que el inmueble estaba gravado con una hipoteca en garantía de pagaré a favor de Doral Mortgage Corporation por la cantidad de $51,200.(1) Acto seguido, manifestó que la ven-dedora había satisfecho el balance total de la obligación, pero estaba en espera del pagaré para proceder con su cancelación. Luego de examinar la escritura, nos hemos percatado que no contiene referencia alguna sobre la rea-lización de un estudio de título de la propiedad en cuestión ni una advertencia legal a esos efectos.
No obstante, tras comenzar los trámites de refinancia-miento de la propiedad y realizar el estudio de título co-rrespondiente, la señora Martínez Morales supo que la propiedad estaba afecta a una hipoteca en garantía de pa-garé a favor de First Financial Corporation, ascendente a $44,670. Según se desprende del estudio de título, dicha hipoteca fue constituida ante la notaría Gloria B. Aquino Aponte mediante la escritura número 2788 el 17 de diciem-bre de 1993.(2)
Ante tal situación, la señora Martínez Morales se comu-nicó en múltiples ocasiones con el licenciado Torres Alicea para que éste procediera a cancelar el referido pagaré. Sin embargo, la señora Martínez Morales adujo que el quejoso nunca consiguió el pagaré en cuestión. Como consecuencia *459 de lo anterior, la señora Martínez Morales tuvo que pagar $1,500 al Banco Popular para que dicha entidad efectuara la cancelación del referido pagaré.
Posteriormente, el licenciado Torres Alicea contestó la queja formulada en su contra y admitió que no había can-celado el pagaré en cuestión al momento de la compraventa. No obstante, señaló que la hipoteca siempre había estado inscrita y que ello era de conocimiento de las partes. Sin embargo, señaló que había hecho constar tal situación en el párrafo tres de la parte expositiva de la escritura.
El licenciado Torres Alicea indicó, además, que se com-prometió con la señora Martínez Morales a tratar de loca-lizar el aludido pagaré. Por ello, procedió a comunicarse con la Sra. Ethel Torres Arroyo y la Sra. Esther Arroyo Rivera, parte vendedora en el negocio jurídico. No obs-tante, el referido pagaré nunca apareció.
Finalmente, el licenciado Torres Alicea argüyó que no había cometido falta ética alguna, puesto que nunca había suscrito un contrato con la señora Martínez Morales, a quien trató de ayudar; que había especificado en la escri-tura que dicho pagaré estaba pendiente de cancelación, y “que por ser notario de la transacción mencionada, ... hizo todo lo más que podía hacer: cooperar para ver si la tran-sacción se podía efectuar”.(3)
Posteriormente, la Directora de la Oficina de Inspección de Notarías (ODIN), Leda. Lourdes I. Quintana, sometió a nuestra consideración el informe correspondiente. Con-cluyó que el notario de epígrafe no realizó una investiga-ción adecuada de los antecedentes regístrales del inmueble en cuestión, ya que éste estaba gravado con una hipoteca distinta a la que se describió en la escritura. Señaló, ade-más, que el licenciado Torres Alicea no les advirtió a los otorgantes la necesidad de realizar un estudio de título.
Luego de concederle varios términos al licenciado Torres *460 Alicea para contestar el informe de ODIN, éste compareció ante nos. En su contestación al informe, admitió los hechos antes reseñados y se limitó a exponer que el derecho plas-mado en el informe no aplicaba a la querella de autos. Fi-nalmente, sostuvo que no tenía la obligación de proveer el pagaré para su cancelación.
I
Reiteradamente hemos expresado que el notario es el custodio de la fe pública, espina dorsal de todo el esquema de autenticidad documental.(4) Como tal, al autorizar un documento, el notario da fe y se cerciora de que dicho instrumento público cumple con todas las formalidades de la ley, que es legal y verdadero, y que es una transacción legítima y válida.(5)
La fe pública notarial impone al notario el deber de hacer las averiguaciones mínimas que requieren las normas de la profesión al momento de autorizar el otorgamiento de la escritura.(6) Sobre este particular, en In re Vera Vélez, 148 D.P.R. 1, 9 (1999), resolvimos que "el notario que autoriza una escritura no puede ignorar el estado registral de la propiedad sobre la cual las partes otorgan la escritura a la fecha del otorgamiento”. El notario tiene la indeclinable obligación de conocer el estado registral de la propiedad, en su función principal de custodio de la fe pública.(7)
Según esta obligación, el notario tiene el ineludible de-ber de ilustrar a los otorgantes para lograr que éstos con-curran al acto notarial en un estado de conciencia *461 informada. Para ello, el custodio de la fe pública tiene que cerciorarse de hacer a las partes todas aquellas explicacio-nes, aclaraciones y advertencias necesarias para lograr el consentimiento informado de los otorgantes.(8) Tal deber conlleva una gestión intelectual y aplicación inteligente de los principios de derecho positivo y de jurisprudencia.(9) Ahora bien, dicha función no se da en el vacío, pues implica tomar en cuenta el contenido del negocio y significado total e integral de las estipulaciones a suscribir y consentir. (10)
Para lograr el consentimiento informado de los compradores en una escritura de compraventa, es imperativo que el notario les advierta sobre la conveniencia de realizar un estudio de título, de manera que éstos conozcan las cargas y los gravámenes a los cuales está afecta la propiedad.(11) Ahora bien, si las partes no quieren ordenar la preparación de un estudio de título, el notario deberá consignar por escrito que les explicó la necesidad y conveniencia de prepararlo.(12) Asimismo, el notario deberá advertirles que el estudio de título no asegura que en el Registro de la Propiedad hayan sido inscritas otras cargas posteriormente.
En In re López Maldonado, 130 D.P.R. 863 (1992), enfa-tizamos la importancia de que el notario haga una investi-gación de los antecedentes regístrales de la propiedad antes del otorgamiento de una escritura, y expresamos que viola la fe pública notarial el no hacer un estudio de título en el Registro de la Propiedad y proceder a preparar y autorizar una escritura, dando fe de hechos que no coinciden con la realidad registral. Tal proceder constituye, a su vez, una *462 violación al Canon 35 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.(13)
II
Al aplicar al caso de autos la normativa antes expuesta, es forzoso concluir que el licenciado Torres Alicea violó la Ley Notarial de Puerto Rico y el Canon 35 del Código de Ética Profesional, supra. Al examinar la escritura de com-praventa, nos percatamos que, en efecto, el licenciado Torres Alicea expuso que el inmueble estaba gravado con una hipoteca distinta a la que consta en el estudio de título. Evidentemente, el licenciado Torres Alicea se cruzó de bra-zos y no cumplió con su obligación de conocer el estado registral de la propiedad en cuestión ni realizó un estudio de título a esos efectos. Además de ello, el licenciado Torres Alicea no les advirtió a los compradores la conveniencia de realizar un estudio de título.
Lo que más nos sorprende es que aún hoy, el licenciado Torres Alicea parece que no se ha percatado que la hipoteca descrita en la escritura de compraventa no es la misma que consta en el estudio de título. En tal escritura se hizo cons-tar que la propiedad estaba afecta por una hipoteca a favor de Doral Mortgage —la cual se había satisfecho— y estaba pendiente la cancelación del pagaré. No obstante, en el es-tudio de título realizado aparece una hipoteca a favor de First Financial Corporation. Lo anterior nos confirma que el licenciado Torres Alicea no realizó las investigaciones mínimas para conocer el estado registral de la propiedad.
En In re Ramos Meléndez y Cabiya Ortiz, infra, resolvimos que procede sancionar con una amonestación al abogado-notario que incurra en la conducta antes descrita si están presentes las circunstancias atenuantes siguien- *463 tes: (1) que los hechos demuestren que no hubo mala fe ni intención de engañar de parte del querellado; (2) que una vez se percató del error y de las consecuencias adversas para el querellante, el notario desplegó gran diligencia co-rregirlo y subsanarlo, y (3) que el querellante exprese que no tiene interés en ulteriores procedimientos en relación con el notario querellado.(14)
En este caso no están presentes tales atenuantes. Aun cuando los hechos particulares del caso no evidencian que el licenciado Torres Alicea tuvo mala fe o intención de en-gañar, éste no desplegó diligencia alguna para subsanar la negligencia cometida. Tal y como señalamos, surge de los documentos que obran en autos que el licenciado Torres Alicea no se ha percatado de que no detalló todas las car-gas a las cuales estaba afecta la propiedad. Tampoco está presente el tercer atenuante, puesto que la señora Martí-nez Morales inició este procedimiento disciplinario ante la conducta del licenciado Torres Alicea.
En resumen, la conducta desplegada por el licenciado Torres Alicea en la autorización de la escritura número 16 demuestra fehacientemente que éste violó la fe notarial. Ciertamente, no actuó con la corrección y diligencia que se requiere de todo abogado-notario. Recordemos, pues, que la función pública del notario trasciende a la de un autó-mata legalizador de firmas y penetra al campo de la lega-lidad de la transacción que ante él se concreta.(15) Por ello, es imperativo que el notario conozca el estado registral del inmueble objeto de la transacción y supla a los otorgantes las explicaciones, aclaraciones y advertencias necesarias para el otorgamiento de la escritura.
Por los fundamentos antes expuestos, se suspende in-mediatamente y en forma indefinida al Ledo. Rafael Torres Alicea del ejercicio de la notaría. Apercibimos, a su vez, al licenciado Torres Alicea para que en el futuro conteste los *464 requerimientos de este Tribunal dentro del término señalado. Se ordena al Alguacil del Tribunal Supremo que incaute los Protocolos y los Registros de Affidavit de dicho notario.

Se dictará sentencia de conformidad.

 Según se deduce de los documentos de autos, dicha escritura fue otorgada ante la notaría Teresita Navarro García el 28 de junio de 1990.

 Dicho estudio de título fue preparado el 9 de marzo de 2006.

 Contestación a la queja, pág. 3.

 Véanse: Feliciano v. Ross, 165 D.P.R. 649 (2005); In re Rivera Vázquez, 155 D.P.R. 267(2001).

 Véase In re Feliciano Ruiz, 117 D.P.R. 269 (1986).

 In re Peña Clos, 135 D.P.R. 590, 601 (1994).

 Feliciano v. Ross, supra, pág. 659.

 In re Pizarro Colón, 151 D.P.R. 94, 106 (2000); In re Jiménez Bracket, 148 D.P.R. 287 (1999).

 In re Salas Davis, 145 D.P.R. 539 (1998).

 Íd.

 Chévere v. Cátala, 115 D.P.R. 432, 445 (1984).

 Íd.

 El Canon 35 de los Cánones de Ética Profesional dispone, en lo pertinente: “El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar a[f]fidávit u otros documentos, y al presentar causas.” 4 L.P.R.A. Ap. IX.

 In re Ramos Meléndez y Cabiya Ortiz, 120 D.P.R. 796 (1988).

 In re Meléndez Pérez, 104 D.P.R. 770 (1976).