EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>Carlos M. Palmer Ramos | 2016 TSPR 61<br><br>195 DPR ____ |

Número del Caso: CP-2012-7

Fecha: 29 de marzo de 2016

Oficina de la Procuradora General:

        Lcda. Margarita Mercado Echegaray
        Procuradora General

        Lcda. Tatiana Grajales Torruellas
        Subprocuradora General

        Lcda. Yaizamari Lugo Fontanez
        Procuradora General

Abogado del Querellado:

        Lcdo. Raúl Rodríguez Quiles

Comisionada Especial:

        Hon. Mercedes Marrero de Bauermeister

Materia: Conducta Profesional – La suspensión será efectiva el 7 de abril de 2016, fecha en que se le notificó al abogado de su suspensión inmediata de la notaría.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Carlos M. Palmer Ramos          CP-2012-7

*PER CURIAM*

En San Juan, Puerto Rico, a 29 de marzo de 2016.

En esta ocasión nos corresponde sancionar a un abogado por incumplir con el Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX, y con ciertas disposiciones de la Ley Notarial de Puerto Rico (Ley Notarial), Ley Núm. 2-1987, 4 LPRA sec. 2001 et seq.

I

El Lcdo. Carlos M. Palmer Ramos (licenciado Palmer Ramos o querellado) fue admitido al ejercicio de la abogacía el 12 de diciembre de 1975 y a la notaría el 3 de febrero de 1976. El 11 de mayo de 2007, el Sr. Alexis J. Troche Rivera (señor Troche Rivera o querellante) presentó una queja contra

el licenciado Palmer Ramos. Los hechos que dieron lugar a este procedimiento disciplinario se exponen a continuación.

El 21 de noviembre de 2001, el licenciado Palmer Ramos autorizó la Escritura Núm. 182 sobre Segregación y Partición (Escritura Núm. 182) para la Sucesión del Sr. Hermenegildo Rivera Vázquez y la Sra. Dolores Vázquez Martínez compuesta por el Sr. Carlos Rafael Rivera Rodríguez y las Sras. Eugenia, María, María Virginia y Ana Luz Rivera Martínez (Sucesión Rivera-Vázquez). En la escritura, el querellado consignó que la Sucesión Rivera-Vázquez segregaba la Finca Núm. 1293 en varios solares según fuera aprobado por la Administración de Reglamentos y Permisos (ARPE) en el caso Núm. 01LU2-00000-03910. Además, expresó que la cabida de la Finca Núm. 1293 era 13.9746 cuerdas, medida que constaba en el Registro de la Propiedad.

Sin embargo, sucede que en la autorización de ARPE y el plano preparado por el agrimensor Sr. José R. Rivera en el caso Núm. 01LU2-00000-03910, se estableció que la cabida de la Finca Núm. 1293 era de 9 cuerdas. Asimismo, la Escritura Núm. 182 también reflejó discrepancias con la autorización de ARPE en el desglose de las cabidas de otros solares, particularmente los núm. 3, 5 y 11

(Remanente).[1] A pesar de lo anterior, el querellado no hizo constar alguna advertencia particular en la Escritura Núm. 182, sólo señaló que hizo las advertencias legales pertinentes.

Ese mismo día, el licenciado Palmer Ramos autorizó las Escrituras Núm. 183 a la 186 sobre División Parcial de Comunidad[2] y la Escritura Núm. 187 sobre Compraventa (Escritura Núm. 187). En esta última, el querellado autorizó la compraventa del solar número 2, adjudicado a la heredera Ana Luz Rivera Martínez mediante la Escritura Núm. 184, a favor del señor Troche Rivera. Nuevamente, no surge de la misma alguna advertencia particular, sólo que el querellado realizó las advertencias legales pertinentes.

El 20 de febrero de 2002, la Sra. Ana Luz Rivera Martínez presentó ante el Registro de la Propiedad la mayoría de las escrituras mencionadas anteriormente.[3] El 27 de febrero de 2006, retiró las Escrituras Núm. 182, 183, 185, 187. Para el 21 de septiembre de 2007 la cabida de la

---

[1] Indicó que la cabida de los solares núm. 3, 5 y 11 eran 586.8087, 586.8087 y 22,272.22, respectivamente, aunque la autorización de ARPE señalaba que eran 586, 666 y 20,241.56 metros.

[2] En dichas escrituras se realizaron las siguientes divisiones: el heredero Sr. Carlos Rafael Rivera Rodríguez recibió los solares núm. 1 y 7 (Escritura Núm. 183); la heredera Sra. Ana Luz Rivera Martínez recibió los solares núm. 2 y 9 (Escritura Núm. 184); la heredera Sra. María Virginia Rivera Martínez recibió los solares núm. 3 y 3A (Escritura Núm. 185); la heredera María Rivera Martínez recibió los solares núm. 5, 10 y 10A mientras que la heredera Sra. María Eugenia Rivera Martínez los solares núm. 4, 5A, 5B, 6 y 8 (Escritura Núm. 186).

[3] No presentó ante el Registro de la Propiedad para su inscripción la Escritura Núm. 184 ni la Escritura Núm. 186.

Finca Núm. 1293 en el Registro de la Propiedad continuaba siendo 13.9746 cuerdas.

El 11 de mayo de 2007, el señor Troche Rivera presentó la queja objeto de este procedimiento disciplinario. En esencia, alegó que contrató al querellado para que autorizara una escritura de compraventa y que la misma no pudo inscribirse en el Registro de la Propiedad por unas deficiencias. Señaló que la escritura fue retirada del Registro de la Propiedad y que el querellado no ha realizado gestión alguna para lograr que se inscriba. Indicó que sufrió pérdidas económicas porque la negligencia del licenciado Palmer Ramos tuvo el efecto de malograr un trámite de préstamo de construcción que solicitó.[4]

En su contestación a la queja, el licenciado Palmer Ramos explicó lo relacionado a su trabajo con la Sucesión Rivera-Vázquez y aceptó que el solar número 2 se le transfirió al quejoso. Señaló que, una vez se presentaron los documentos en el Registro de la Propiedad, el Registrador "pre-calificó" los instrumentos e informó la discrepancia entre la cabida que se reflejaba en el plano de ARPE y la que constaba en el Registro de la Propiedad. Arguyó que la heredera María Eugenia Rivera Martínez le informó que el agrimensor Jose R. Rivera estaba atendiendo

---

[4] Acompañó con la queja copia de un cheque por $250.00 con fecha de 20 de noviembre de 2001 a favor del querellado y algunos documentos relacionados a la queja que presentó en el Colegio de Abogados por los mismos hechos pero que fue desistida para acudir a este foro.

el asunto pero cuando trató de comunicarse con él descubrió que se encontraba incapacitado. Por tanto, acordó con la Sucesión Rivera-Vázquez instar la acción judicial de rectificación de cabida pero explicó que no se había comenzado porque se requería una certificación de mensura preparada por otro agrimensor. Por último, explicó que se ha comunicado con la Sucesión Rivera-Vázquez y no con el quejoso por razones éticas, pero que las medidas que ha tomado han ido dirigidas a resolver la situación del quejoso a pesar de que no fue contratado para el trámite de rectificación de cabida.[5]

Posteriormente, la otrora Directora de la Oficina de Inspección de Notarías (ODIN), Lcda. Lourdes I. Quintana Lloréns, presentó ante nosotros un *Informe*. Luego de exponer el trasfondo fáctico, concluyó que la discrepancia entre las cabidas existía al momento en que el querellado autorizó la Escritura Núm. 182 y surgía de los documentos utilizados para la segregación. Por lo tanto, el licenciado Palmer Ramos debió solicitar los antecedentes registrales de la Finca Núm. 1293 y aclarar la situación

---

[5] El querellado incluyó como anejo una declaración jurada del agrimensor José R. Rivera Cruz suscrita en diciembre de 2003. En ésta, el señor Rivera Cruz expresó que la mensura de la Finca Núm. 1293, realizada a petición de la Sucesión Rivera-Vázquez, resultó en una menor cabida, a saber, 9 cuerdas. Además, anejó una comunicación que ARPE le envió en febrero de 2005 al agrimensor de la cual surge que ante la agencia se presentó una solicitud de rectificación de cabida. En la carta, la ARPE le requirió varios documentos adicionales y le informó que era necesario un trámite judicial para aclarar la cabida en el Registro de la Propiedad por ser una disminución de 35.62%.

antes de autorizar la escritura.[6] Como mínimo, la ODIN entiende que debió consignar en la Escritura Núm. 182 la discrepancia y una advertencia en cuanto a la necesidad de rectificar la cabida, así como las consecuencias de no hacerlo antes de segregar la finca. En cambio, el licenciado Palmer Ramos indicó en la Escritura Núm. 182 que la cabida registral era de 13.9746 cuerdas, lo cual causó que el Registrador de la Propiedad notificara la diferencia y se afectara el tracto de las escrituras posteriores, incluyendo la Escritura Núm. 187 del quejoso. Asimismo, la ODIN señaló que el querellado también incluyó cabidas incongruentes para los solares núm. 3, 5 y 11. Por lo anterior, la ODIN entendió que el querellado incumplió con los Arts. 2, 14 y 15(f) de la Ley Notarial, 4 LPRA secs. 2002, 2032, 2033.[7]

El licenciado Palmer Ramos reaccionó al *Informe* de la ODIN y, entre otras cosas, señaló que entendió de buena fe que tenía que describir la finca según las constancias del Registro y no los documentos complementarios. Razonó que por ser la discrepancia en la cabida atribuible al remanente se podía atender posteriormente sin afectar el proceso de inscripción de las escrituras. Por lo tanto, indicó que los titulares pueden presentar nuevamente las

---

[6] La ODIN señaló que del plano de segregación surgía que la Finca Núm. 1293 tenía varios solares que al parecer se habían segregado con anterioridad, lo cual explicaría la disminución de cabida. *Informe* de la ODIN, págs. 11-12.

[7] La ODIN también recomendó para la evaluación final de la queja que el licenciado Palmer Ramos, entre otras cosas, aclarara la situación actual del inmueble e informara las gestiones que realizó para resolver la deficiencia que presentaba la Escritura Núm. 182.

escrituras y el Registrador debía inscribirlas.[8] Asimismo, arguyó que las discrepancias en las cabidas de los solares núm. 3, 5 y 11 se debieron a unos errores mecanográficos y que le informó a los titulares que tenían que otorgar un acta notarial pero que no incurrirían en gasto alguno.[9]

Luego de algunos trámites, el 30 de agosto de 2011 la Procuradora General también rindió un *Informe*. En síntesis, coincidió con la ODIN en cuanto a que el licenciado Palmer Ramos tenía la obligación de aclarar la cabida antes de autorizar las escrituras o al menos hacer las advertencias necesarias. Determinó que esa omisión puede significar una posible violación al Canon 18 de Ética Profesional, 4 LPRA Ap. IX. Asimismo, hizo referencia al Art. 63 de la Ley Hipotecaria, 30 LPRA sec. 2266, el cual dispone que un notario que por su falta cometiere alguna omisión que impida la inscripción de un contrato tiene el deber de subsanar prontamente el error al serle requerido. Expuso que el querellado tuvo conocimiento de la queja desde el 2007, pero todavía no ha logrado la inscripción de las escrituras. En cambio, en

---

[8] Utiliza como fundamento varios casos de este Tribunal, particularmente, Ruiz v. Torres, 61 DPR 1 (1942); Piñero v. Registrador, 75 DPR 455 (1953); y Alameda Towers Associates v. Muñoz Román, 129 DPR 698 (1992).

[9] Este Tribunal le concedió a la ODIN un término para que se expresara en cuanto a la contestación del querellado. En su *Moción en Cumplimiento de Orden*, la ODIN indicó que de la misma no surge que el querellado asumió su responsabilidad por las deficiencias de las escrituras y tampoco informó gestiones concretas dirigidas a resolver este asunto. Además, entendió que la solución del licenciado Palmer Ramos consistente en presentar nuevamente las escrituras en el Registro de la Propiedad sin rectificar la cabida o añadir una advertencia en cuanto a la discrepancia en cuestión no garantizaba la inscripción de éstas.

2010 le comunicó a dicha oficina, por medio de su representante legal, que la diferencia en cabida se debía a un terreno que fue ocupado por una carretera, pero que no había podido corregir la situación porque el quejoso no quería cooperar. Según el licenciado Palmer Ramos, el quejoso no cooperó porque no aceptó su sugerencia de desistir de la queja sin perjuicio para evitar un alegado conflicto de interés con el abogado que tramitaría la rectificación de cabida. Abogado que contrataría el querellado. La Procuradora General no encontró justificación alguna que le impidiera al licenciado Palmer Ramos, con una queja activa, corregir la situación para lograr la inscripción de las escrituras. Por tanto concluyó que no ha sido diligente en ese asunto y que esa conducta podría conllevar otra violación al Canon 18 de Ética Profesional, supra.

Este Tribunal ordenó a la Procuradora General que presentara la Querella correspondiente y ésta así lo hizo. En la misma, se formularon los siguientes cargos:

### Cargo I

El licenciado Carlos M. Palmer incumplió con el principio consagrado en el Artículo 2 de la Ley Notarial al consignar información en la [E]scritura Núm. 182 que era inconsistente con la realidad de los hechos y la información que tuvo ante su consideración.

### Cargo II

El licenciado Palmer incumplió con el Artículo 14 y el Artículo 15 (f) de la Ley Notarial al otorgar la Escritura Núm. 182 sin antes aclarar

la cabida del inmueble y al no consignar del propio documento, las advertencias específicas que por su importancia para el negocio jurídico y para el consentimiento informado de las partes deben detallarse expresamente.

### Cargo III

El licenciado Palmer violó los preceptos del Canon 18 de Ética Profesional al no realizar una labor idónea y competente en su labor como abogado-notario previo y durante el al [sic] otorgamiento de la Escritura Núm. 182 y 187, así como al no realizar las diligencias necesarias para subsanar los defectos que impidieron la inscripción de las referidas escrituras.

El licenciado Palmer Ramos contestó la querella y alegó que no incumplió con lo establecido en el Art. 2 de la Ley Notarial, _supra_, porque él tenía la obligación de describir la Finca Núm. 1293 según las constancias del Registro de la Propiedad. Razonó que la discrepancia en este caso era "una cuestión técnica que nunca debía salirse del ámbito de la propia Administración de Reglamentos y Permisos (...)".[10] Por otro lado, señaló nuevamente que las discrepancias en las cabidas de los solares núm. 3, 5 y 11 se debieron a errores mecanográficos y que se propone otorgar un acta notarial para corregirlas.

Con relación a la violación de los Arts. 14 y 15 de la Ley Notarial, _supra_, explicó que la Sucesión Rivera-Vázquez, a pesar de conocer que había una diferencia en cabida, le requirió que otorgara la escritura de segregación porque los herederos querían adjudicar los

---

[10] Contestación de Querella, pág. 1.

solares según lo habían hecho físicamente hacía años. Reconoció que posiblemente cometió un error al no consignar expresamente las advertencias sobre la cabida pero que el otorgamiento lo realizó según la voluntad de los otorgantes. Finalmente indicó que logró concertar una reunión con un agrimensor, el Sr. Arturo Llavona Cartagena, pero que surgió un inconveniente con unas contribuciones sobre la propiedad y el caso fue desistido. Alegó que después de reunirse con ciertos herederos para solucionar el asunto de las contribuciones, contrataron a otro agrimensor, el Sr. Bienvenido Alverio Berríos, quien realizó el plano de rectificación de cabida. Sin embargo, una de las herederas falleció y el querellado está trabajando libre de costo con la sucesión de la causante para que puedan comparecer al otorgamiento de la rectificación de cabida. Indicó que estaba esperando la certificación de cancelación de gravamen del Departamento de Hacienda para continuar con los trámites.

Examinadas las comparecencias del querellado, la ODIN y la Procuradora General, nombramos a la Hon. Mercedes Marrero de Bauermeister, Ex Jueza del Tribunal de Primera Instancia, como Comisionada Especial para que recibiera la prueba y nos rindiera un informe con las determinaciones de hechos y las recomendaciones que estimara pertinente. Según el *Informe* de la Comisionada Especial, el licenciado Palmer Ramos niega el primer cargo, admite el segundo y

con relación al tercero admite que omitió las advertencias requeridas, pero expresa que realizó las diligencias necesarias para subsanar los defectos.

Luego de celebrar una vista evidenciaria,[11] la Comisionada Especial concluyó que el licenciado Palmer Ramos incumplió con el Art. 2 de la Ley Notarial, supra, al autorizar un documento que carecía de eficacia. Razonó que el querellado debió prever que la discrepancia en cabida impediría la inscripción de la Escritura Núm. 182 y afectaría las escrituras posteriores. Asimismo, determinó que violó los Arts. 14 y 15(f) de la Ley Notarial, supra, al otorgar la Escritura Núm. 182 y no consignar las advertencias necesarias. Por último, entendió que violó el Canon 18 de Ética Profesional, supra, al faltar a su deber de diligencia, no tan sólo en la otorgación de la Escritura Núm. 182, sino también en los trámites para lograr la rectificación de la cabida. Señaló que "aunque la tardanza en el prolongado trámite no le sea imputable directamente al licenciado Palmer Ramos, el lograr la

_____

[11] La vista evidenciaria se celebró el 16 de enero de 2014. La Sra. María Eugenia Rivera Martínez testificó que la Sucesión Rivera-Vázquez conocía que la Finca Núm. 1293 tenía una cabida de 9 cuerdas; que cuando el querellado supo que el Registrador iba a notificar la discrepancia en la cabida le advirtió que tenía que contratar un nuevo agrimensor y presentar una acción judicial para rectificarla; y que, aunque al momento de la vista la Escritura Núm. 182 no estaba inscrita, cada heredero había tomado posesión de los solares según adjudicados. Por otro lado, el agrimensor Bienvenido Alverio Berríos testificó que en septiembre de 2010 la Sra. Olga Rodríguez lo contactó para encomendarle la mensura de la Finca Núm. 1293; en diciembre de ese mismo año le proveyó a la Sucesión Rivera-Vázquez la cotización por sus servicios; y a finales del 2011 la Sucesión lo contrató. La mensura arrojó una cabida de 9 cuerdas y él presentó una solicitud de rectificación de cabida ante ARPE, la cual fue aprobada el 18 de mayo de 2012.

aprobación de la rectificación de cabida del remanente tomó en exceso de diez (10) años desde la fecha que el licenciado Palmer Ramos autorizó las escrituras con faltas, a sabiendas de ello".[12] La Comisionada Especial recomendó la suspensión del querellado del ejercicio de la notaría.

Examinemos la normativa aplicable a este asunto.

## II

Está firmemente establecido que el notario es el custodio de la fe pública y, como tal, está obligado a cumplir con la Ley Notarial, supra, su Reglamento, 4 LPRA Ap. XXIV, y los Cánones del Código de Ética Profesional, 4 LPRA Ap. IX. In re Nieves Nieves, 171 DPR 843, 848 (2007); In re Davison Lampón, 159 DPR 448, 455 (2003); In re Montañez Miranda, 157 DPR 275, 282 (2002). El incumplimiento con esas fuentes de obligaciones exponen al abogado a las sanciones disciplinarias que este Tribunal estime procedentes. In re Fontánez Fontánez, 181 DPR 407, 418 (2011); In re Davison Lampón, supra.

En lo pertinente, el Art. 2 de la Ley Notarial, supra, dispone que:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales

---

[12] *Informe* de la Comisionada Especial, pág. 15.

a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.

Acorde con lo anterior, el Art. 14 de la Ley Notarial, supra, establece que: "[l]os notarios redactarán las escrituras públicas de acuerdo con la voluntad de los otorgantes y adaptándola a las formalidades jurídicas necesarias para su eficacia". Igualmente, como parte de su función, el notario tiene que asegurarse de obtener el consentimiento informado de los otorgantes haciéndoles todas las explicaciones, aclaraciones y advertencias que sean necesarias. In re Torres Alicea, 175 DPR 456, 461 (2009); In re Jiménez Brackel, 148 DPR 287, 295 (1999). En esencia, cuando un notario autoriza una escritura debe:

(i) indagar la voluntad de los otorgantes; (ii) formular la voluntad indagada; (iii) investigar ciertos hechos y datos de los que depende la eficacia o validez del negocio; y (iv) darles a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y consecuencias del negocio, y se den cuenta de los riesgos que corren en celebrarlo. In re Davison Lampón, 159 DPR 448, 461 (2003). Véase Chévere v. Cátala, 115 DPR 432 (1984).

En cuanto a las advertencias, el Art. 15(f) de la Ley Notarial, supra, dispone que en la escritura, el notario deberá consignar, entre otras cosas, "[e]l haberles hecho de palabra a los otorgantes en el acto del otorgamiento las reservas y advertencias legales pertinentes. No obstante, se consignarán en el documento aquellas

advertencias que por su importancia deban, a juicio prudente del notario, detallarse expresamente". Este Tribunal ha expresado que el notario debe aplicar el derecho positivo y la jurisprudencia considerando, a su vez, el contenido del negocio y las estipulaciones a suscribirse al momento de decidir qué advertencias debe hacer constar. _In re Torres Alicea_, _supra_. En consecuencia, tiene la obligación ética de conocer el derecho aplicable al asunto ante su consideración.

Por último, el Canon 18 de Ética Profesional, _supra_, le impone al abogado "el deber de ser competente, cuidadoso y diligente al tramitar los asuntos que su cliente le encomienda y al defender los intereses de este último". Cuando un notario contraviene las disposiciones de la Ley Notarial viola el referido canon al no ejercer la profesión con el cuidado y la prudencia requerida. _In re Muñoz Fernós_, 184 DPR 679, 685 (2012).

Apliquemos este marco legal a los hechos ante nuestra consideración.

### III

Los cargos presentados en contra del licenciado Palmer Ramos se circunscriben en su mayoría al otorgamiento de la Escritura Núm. 182. En particular, se indica que violó el Art. 2 de la Ley Notarial, _supra_, al consignar en la Escritura Núm. 182 que la cabida de la Finca Núm. 1293 era de 13 cuerdas a pesar de que ello era

inconsistente con la cabida que surgía de los planos de ARPE ante su consideración. Asimismo, surge de la querella que violó los Arts. 14 y 15(f) de la Ley Notarial, supra, al no aclarar la cabida de la Finca Núm. 1293 antes de otorgar la Escritura Núm. 182 y no incluir las advertencias específicas que se debían detallar en vista de la discrepancia y sus posibles consecuencias. Por último, se le imputó una violación al Canon 18 de Ética Profesional, supra, por no realizar una labor idónea al autorizar las Escrituras Núm. 182 y 187 ni subsanar los defectos con la diligencia requerida.

Por su parte, el querellado entendió que estaba obligado a incluir en la escritura la cabida que constaba en el Registro de la Propiedad y que la discrepancia en cuestión no afectaría la inscripción de esa escritura ni las posteriores. Por otro lado, aceptó que debió incluir expresamente en la Escritura Núm. 182 las advertencias con relación a la discrepancia en la cabida y la necesidad de rectificarla. Respecto a la subsanación de las escrituras, indicó que ha realizado las diligencias necesarias.

Hemos establecido que un notario tiene el deber de conocer el estado registral de la propiedad sobre la cual se otorga la escritura en aras de asegurarse que autoriza un documento eficaz y que obtuvo el consentimiento informado de los otorgantes. In re Toro González, 2015 TSPR 134, 18-19; 193 DPR ____ (2015); In re Torres Alicea,

supra, págs. 460-461; Feliciano v. Ross, 165 DPR 649, 659 (2005).

Además, en Alameda Tower Associates v. Muñoz Román, 129 DPR 698 (1992) resolvimos que el Registrador de la Propiedad actuó correctamente al negarse a inscribir una escritura porque "en el Registro y en la faz de los documentos complementarios constaba la anomalía de que la cabida de la finca original era *menor* que la suma de las cabidas de las fincas segregadas y el remanente". Alameda Tower Associates v. Muñoz Román, supra, pág. 708. (énfasis en el original). Esto porque se quiere que la finca en sentido material corresponda a la finca en sentido registral, a saber, que la realidad física vaya acorde con la jurídica para poder identificar la finca de forma más certera. Íd., págs. 706-707.

Examinados los documentos ante nuestra consideración, así como las comparecencias de las partes, concluimos que el licenciado Palmer Ramos violó el Art. 2 de la Ley Notarial, supra, al autorizar un instrumento que carecía de eficacia. El querellado debió saber, según lo establecido por este Tribunal en Alameda Tower Associates v. Muñoz Román, supra, que la Escritura Núm. 182 y las posteriores no tendrían acceso al Registro de la Propiedad. La primera por la discrepancia en la cabida de la Finca Núm. 1293 y la de los solares núm. 3, 5 y 11; y

el resto de las escrituras por falta de tracto.[13] Por tanto, antes de autorizarla debió cerciorarse de que la situación se había aclarado mediante el proceso correspondiente de rectificación de cabida.[14] Al no hacer lo anterior también violó el Art. 14 de la Ley Notarial, <u>supra</u>, ya que no adaptó la voluntad de los otorgantes a las formalidades jurídicas necesarias para su eficacia. En este caso, la voluntad de los otorgantes, según el querellado, era segregar la Finca Núm. 1293 y llevar a cabo la partición, operación que no pudo ser inscrita por las faltas del licenciado Palmer Ramos.

Por otro lado, al decidir otorgar la Escritura Núm. 182 con la discrepancia antes aludida, el querellado violó

---

[13] Desconocemos si las escrituras en controversia tienen otras deficiencias.

[14] En lo pertinente, el Art. 247 de la Ley Hipotecaria, 30 LPRA sec. 2772, dispone que:

> La rectificación de cabida de todas las fincas ya inscritas podrá hacerse constar en el Registro por cualquiera de los medios que siguen:
>
> Mediante sentencia firme dictada en un procedimiento ordinario de deslinde judicial o fijación de cabida.
>
> Por escritura pública cuando se trate de disminución de cabida o de un exceso no mayor del veinte por ciento (20%) de la cabida registrada y se lleve a efecto mediante la oportuna mensura técnica acreditada con arreglo a lo dispuesto en la sec. 2765 de este título. En todo caso de disminución de cabida será preciso acreditar la autorización de la Junta de Planificación o de la agencia gubernamental correspondiente.
>
> Mediante expediente de dominio, por todo el exceso, cuando éste fuere mayor del veinte por ciento (20% ). En este caso se citará el dueño anterior inmediato aunque haya trasmitido por escritura pública. En los casos en que el Departamento de la Vivienda sea el titular de dicha finca o haya otorgado dicho título, la rectificación de cabida podrá realizarse mediante escritura pública y la oportuna mensura técnica acreditada con arreglo a lo dispuesto en este subtítulo.

los Arts. 14 y 15(f) de la Ley Notarial, supra, porque no hizo constar una advertencia específica detallando la situación e indicando que se requería un procedimiento de rectificación de cabida para lograr el trámite de segregación y su posterior inscripción. Véase In re González Vélez, 156 DPR 580, 582-583 (2002). Cabe mencionar que la heredera María Eugenia Rivera Martínez testificó en la vista ante la Comisionada Especial que los miembros de la Sucesión Rivera-Vázquez sabían que la cabida de la Finca Núm. 1293 era de 9 cuerdas. Sin embargo, eso no excusa los incumplimientos del licenciado Palmer Ramos, máxime cuando la señora Rivera Martínez también indicó que el querellado le advirtió la necesidad de presentar una acción judicial para rectificar la cabida cuando ya las escrituras estaban presentadas en el Registro de la Propiedad.[15]

Finalmente, con relación a la responsabilidad que le impone el Art. 63 de la Ley Notarial, supra, de subsanar prontamente las faltas que impidan la inscripción de un contrato, entendemos que el licenciado Palmer Ramos no cumplió con la diligencia requerida. Tal y como señala la Procuradora General, el querellado supo de la queja presentada por el señor Troche Rivera desde el 2007. Además, la ODIN rindió un Informe en el 2009 en el cual señaló que el querellado debía asumir la responsabilidad por las faltas en este caso. Sin embargo, para el 16 de

---

[15] Informe de la Comisionada Especial, págs. 10-11.

enero de 2014 la Escritura Núm. 182 y las posteriores todavía no estaban inscritas en el Registro de la Propiedad.

Cabe recordar que en el 2010 la representación legal del querellado envió una carta señalando que el quejoso no estaba cooperando con el proceso de subsanación porque no quiso retirar la queja sin perjuicio. El licenciado Palmer Ramos entendía que si el señor Troche Rivera no la retiraba el abogado que él contratara para tramitar la rectificación de cabida tendría un conflicto de interés. Coincidimos con la Procuradora General en cuanto a que no existe justificación alguna para que el querellado no haya realizado las gestiones necesarias para subsanar la situación que impide la inscripción de las escrituras otorgadas en el 2001 cuando tuvo conocimiento del interés del quejoso desde el 2007.

Todas las conductas anteriores, además de constituir una violación a varios artículos de la Ley Notarial, también contravienen el Canon 18 de Ética Profesional, supra. El querellado no fue diligente ni responsable al defender los intereses de su cliente y, en consecuencia, para el 2014 -13 años después del otorgamiento- la Escritura Núm. 187 del quejoso aún no estaba inscrita.[16] Por todo lo expuesto, concluimos que en el caso ante nuestra consideración se probaron los cargos contra el

---

[16] Al presente, no sabemos si están inscritas en el Registro de la Propiedad.

licenciado Palmer Ramos mediante prueba clara, robusta y convincente, según requerido por nuestro ordenamiento. In re Fontánez Fontánez, 181 DPR 407, 417 (2011); In re Caratini Alvarado, 153 DPR 575, 585 (2001).

IV

Habiendo establecido que el querellado incumplió con los Arts. 2, 14 y 15(f) de la Ley Notarial, supra, así como el Canon 18 de Ética Profesional, supra, le corresponde a este Tribunal imponer una sanción disciplinaria. Al momento de analizar cuál debe ser esta sanción, se consideran diversos factores como: el historial previo del licenciado; su reputación en la comunidad; si la conducta se realizó con ánimo de lucro; si aceptó los cargos imputados; su arrepentimiento; y cualquier otra consideración que se estime pertinente. In re Toro González, supra, pág. 25; In re Peña, Santiago, 185 DPR 764, 787 (2012).

Surge del expediente del licenciado Palmer Ramos que en mayo de 1993, ODIN le notificó unas deficiencias en los protocolos para los años 1990 y 1991[17] y la subsanación de las mismas requirió la intervención de esta Curia. En esa instancia, se le impuso una sanción de $500.00 y se le apercibió de futuras inobservancias. Sin embargo, en el 1996 este Tribunal le impuso una sanción de $100.00 y

---

[17] La mayoría de las deficiencias eran arancelarias y las demás incluían la falta de firma, iniciales, rúbrica, antecedentes y fe del conocimiento de los otorgantes, como también la omisión del valor de varias transacciones.

volvió a apercibirle sobre futuras inobservancias "por remitir por correo ordinario dos testamentos y un poder en violación a la Regla 12 (C) del Reglamento Notarial de 1975, la remisión tardía (un mes) de una Escritura de Testamento Abierto y desatender el requerimiento de la ODIN de que explicara dicha tardanza".[18] Posteriormente, la ODIN le notificó unas deficiencias en los protocolos correspondientes a los años 1992 y 1993.[19] Además, tiene una queja pendiente, AB-2015-91, la cual fue presentada el 5 de marzo de 2015 y al presente no ha sido contestada por el querellado.

Según el *Informe* de la Comisionada Especial el querellado aceptó que omitió las advertencias requeridas pero negó los otros cargos. Por otro lado, no se demostró que el ánimo de lucro fuera el motivo de su conducta. No obstante, en vista de las faltas cometidas y del historial disciplinario previamente expuesto, estimamos procedente ordenar la suspensión inmediata del licenciado Palmer Ramos del ejercicio de la notaría por un término de 6 meses. La Oficina del Alguacil de este Tribunal, procederá, de inmediato, a incautar su obra notarial y

---

[18] *Informe* de la Comisionada Especial, pág. 1. Véase *Informe* de la ODIN, pág. 3.

[19] Las deficiencias consistían en omitir la fe del conocimiento de comparecientes, iniciales, y en haber dejado en blanco un espacio con referencia a una hipoteca. El querellado corrigió las deficiencias ese mismo año. Por otro lado, para el 2009 parte de su obra notarial se encontraba en etapa de re-inspección por deficiencias arancelarias, la omisión de la capacidad representativa de los comparecientes, las circunstancias personales de los otorgantes, el carácter ganancial o privativo de inmuebles, así como la falta de sello notarial y rúbrica. *Informe* de la ODIN, págs. 3-4. No surge del expediente cuál es el estado actual de la obra notarial del licenciado Palmer Ramos.

entregarla a la Oficina de Inspección de Notarías para la investigación e informe correspondiente.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Carlos M. Palmer Ramos                CP-2012-7


SENTENCIA

En San Juan, Puerto Rico, a 29 de marzo de 2016.

Por los fundamentos expuestos, se suspende inmediatamente al Lcdo. Carlos M. Palmer Ramos del ejercicio de la notaría por un término de seis (6) meses.

La Oficina del Alguacil de este Tribunal, procederá, de inmediato, a incautar su obra notarial y entregará a la Oficina de Inspección de Notarías para la investigación e informe correspondiente.

Notifíquese personalmente esta Opinión *Per Curiam* al licenciado Palmer Ramos por la Oficina del Alguacil de este Tribunal.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco no intervino.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo